Opinion
 

 SIMS, Acting P. J.
 

 In this appeal seeking recovery of six machines seized as illegal gaming devices, plaintiffs John Trinkle, individually and doing business as Galaxy Vending Company, and Jim Nichols, individually and doing business as Stockton Music Company, appeal from a judgment entered in favor of Jay R. Stroh, as Director of Alcoholic Beverage Control, and Alcoholic Beverage Control (hereafter collectively ABC). Plaintiffs contend
 
 *775
 
 the machines were not illegal gaming devices, and the pertinent Penal Code provisions are unconstitutionally vague. (Undesignated statutory references are to the Penal Code.) We shall affirm the judgment.
 

 Factual and Procedural Background
 

 Plaintiffs are in the vending and amusement machine business and own machines which they rent out to various business establishments.
 

 On April 19, 1994, ABC in a widespread operation termed “Operation Royal Flush” seized numerous machines, including those of plaintiffs, from taverns and from plaintiffs’ business premises, on the grounds they were illegal slot machines and illegal lotteries under section 330a et seq. Plaintiffs assert they were not charged with any crime.
 

 On May 18, 1994, plaintiffs filed complaints pursuant to section 335a
 
 [1]
 
 seeking recovery of some of the machines and any money contained in them. Plaintiffs also sought a declaration that ownership and operation of the machines was legal. The complaints were consolidated for trial. The machines at issue in this appeal are (1) three “Match 5 Jukeboxes”; and (2) three flipperless pinball machines.
 

 A bench trial was held in December 1995. In April 1996, the trial court issued a statement of decision concluding all six machines were illegal gambling devices. The statement of decision found as follows.
 

 The Match 5 Jukeboxes each consisted of a standard jukebox with a “Match 5” device attached to the top of the jukebox. The front panel of the
 
 *776
 
 Match 5 device contained thirty colored lights, five each of six different colors. Players deposited $1 into a bill validator or coin slot in the jukebox (not in the Match 5 device) and selected four songs to be played. These machines would not operate if less than $1 was deposited. Before each song was played, the lights on the Match 5 device randomly flashed and then stopped, with five of the lights remaining lit. If all five remaining lights were the same color, the player who chose the song won a money jackpot, which was displayed on the front of the Match 5 device. The jackpot was increased by 5 cents for each 25 cents deposited into the machine. The jackpot came out of plaintiffs’ proceeds but was paid out by a bartender or clerk.
 

 The other machines at issue in this appeal are flipperless pinball machines, which operated like regular pinball machines with some exceptions. First, since there were no flippers, the player had no real control over where the ball went. Second, unlike a regular pinball machine which accepts only one quarter at a time, the player of the flipperless machine could deposit as many quarters as desired and increased his or her payoff odds by adding more quarters. Third, instead of awarding one or two extra plays to a successful player, these machines could award hundreds of credits for free games. Fourth, these machines had hidden “knockoff’ switches which were used to erase credits awarded the last player who used the machine.
 

 To play the flipperless pinball machine, a player had to insert at least one quarter into a coin slot. Several balls came out into a trough for play. The player then pulled a spring-loaded plunger to shoot each ball into the field of play. The balls bounced off bumpers and eventually fell into one of several numbered holes. The numbered holes corresponded to numbers on the illuminated backboard of the machine. The numbers on the backboard were in a bingo-like grid and lit up in vertical, horizontal and diagonal rows. If all of the balls issued for the game fell into the holes that corresponded to the lighted configuration on the back of the machine, the player won credits, which were displayed on the illuminated backboard. Each credit was worth a free game. The more coins a player inserted, the better his or her odds. These machines could award hundreds of extra credits or potential free replays to a winning player, depending on the odds.
 

 The trial court concluded (1) the three Match 5 Jukeboxes were illegal slot machines and illegal lotteries, and (2) the three flipperless pinball machines were illegal gambling devices and were not exempt as “antiques” within the meaning of section 330.7. The court ordered all six machines destroyed, pursuant to section 335a (fn. 1,
 
 ante),
 
 which authorizes destruction of illegal gaming machines.
 

 The court ordered a seventh machine destroyed, but plaintiffs in their opening brief on appeal state they are not challeging the trial court’s ruling
 
 *777
 
 that they lacked standing with respect to the seventh machine. The court ruled in favor of plaintiffs concerning other machines, which are not at issue on appeal.
 

 Plaintiffs appeal from the portion of the ensuing judgment relating to the three Match 5 Jukeboxes and the three flipperless pinball machines.
 

 Discussion
 

 I.
 
 Standard of Review
 

 This appeal presents questions of statutory construction and other questions of law on undisputed facts, which are subject to de novo review.
 
 (Score Family Fun Center, Inc.
 
 v.
 
 County of San Diego
 
 (1990) 225 Cal.App.3d 1217, 1219-1220, fn. 2 [275 Cal.Rptr. 358];
 
 Simpson
 
 v.
 
 Unemployment Ins. Comp. Appeals Bd.
 
 (1986) 187 Cal.App.3d 342, 350 [231 Cal.Rptr. 690].)
 

 II.
 
 The Match 5 Jukeboxes Are Illegal Slot Machines
 

 Plaintiffs contend the trial court erred in ruling the Match 5 Jukeboxes are illegal slot machines and illegal lotteries. We shall conclude the Match 5 Jukeboxes are illegal slot machines. We therefore need not decide whether they are also illegal lotteries.
 

 Section 330b makes it unlawful for any person to own or rent a slot machine, as defined in section 330b, subdivision (2),
 
 [2]
 
 pursuant to which “the user thereof, as a result of any element of hazard or chance or other outcome unpredictable by him, may become entitled to receive” anything of value. Section 330b excludes certain machines not at issue in this case, e.g., machines which are predominantly games of skill. (§ 330b, subd. (4).)
 
 *778
 
 Section 330.1
 
 [3]
 
 also makes it unlawful to own or rent a slot machine and contains a similar definition of slot machine.
 
 [4]
 

 Plaintiffs contend (1) sections 330b and 330.1 are void for vagueness, (2) the Match 5 Jukeboxes do not meet the statutory definition of slot machines, and (3) the Match 5 Jukeboxes are exempt under section 330.5 as music machines that in every case give customers what they pay for. We disagree on all points.
 

 A.
 
 Vagueness Challenge
 

 Plaintiffs contend section 330b is void for vagueness, because it defines as a prohibited slot machine any machine that is “adapted, or may readily be converted into one that is adapted” for the prohibited use. (§ 330b, subd. (2); fn. 2,
 
 ante.)
 
 Plaintiffs also contend section 330.1 (fn. 3,
 
 ante)
 
 is void for vagueness, because it defines as a prohibited slot machine a machine which is or may be used or operated in the prohibited manner. Plaintiffs assert the language in these statutes is vague because it provides no standard but leaves it up to a judgment call by law enforcement officers as to
 
 *779
 
 whether machines could readily be converted or could be operated in the prohibited manner. We shall conclude plaintiffs’ contention is unavailing.
 

 “ ‘[O]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness.’ ”
 
 (Cranston
 
 v.
 
 City of Richmond
 
 (1985) 40 Cal.3d 755, 764 [221 Cal.Rptr. 779, 710 P.2d 845], citing
 
 Parker
 
 v.
 
 Levy
 
 (1974) 417 U.S. 733, 756 [94 S.Ct. 2547, 2571, 41 L.Ed.2d 439].) “Thus, plaintiffs cannot complain of the vagueness of a statute if the conduct with which they are charged falls clearly within its bounds.”
 
 (Bowland
 
 v.
 
 Municipal Court
 
 (1976) 18 Cal.3d 479, 492 [134 Cal.Rptr. 630, 556 P.2d 1081].)
 

 Plaintiffs claim that vagueness became an issue in this case with respect to the Match 5 machines. However, it became an issue only with respect to Match 5 units that were unattached to jukeboxes—units not at issue in this appeal.
 

 Thus, the evidence cited by plaintiffs—regarding how law enforcement officers decide whether machines are “readily convertible”—related to Match 5 machines that were unattached to any jukeboxes. The trial court found these “stand-alones” were
 
 not
 
 readily convertible and therefore
 
 not
 
 illegal, and no appeal has been taken from that finding. Plaintiffs also cite evidence concerning machines that were not seized or that were returned to plaintiffs without court action. None of these are at issue on appeal.
 

 The only Match 5 machines at issue on appeal are the three Match 5 that were already attached to jukeboxes and operated with the flashing lights and jackpot. As to those three machines, there was no need to decide whether they were “readily convertible” or adaptable to the prohibited use, because they already were adapted to the prohibited use.
 

 Thus, the challenged statutory language is irrelevant to this appeal, and plaintiffs have no basis for a vagueness challenge.
 

 B.
 
 Definition of Slot Machine
 

 Plaintiffs contend the Match 5 Jukeboxes do not meet the definition of slot machines, because of what plaintiffs call “lack of consideration.” We disagree.
 

 According to plaintiffs, the statutes require that in order for a machine to be an illegal slot machine, the machine must immediately begin to operate upon insertion of money into it. Plaintiffs state the Match 5 Jukeboxes did not meet this definition because customers did not insert money into the
 
 *780
 
 Match 5 device. Instead, they inserted money into the attached jukebox. Plaintiffs further state insertion of money into the jukebox did not cause the Match 5 flashing lights to operate. Rather, the selection of songs caused the Match 5 unit to operate. Plaintiffs also consider it significant that the lights flashed before each song was played, rather than flashing four times before the first song was played.
 

 Plaintiffs’ assertions (which they mischaracterize as a “lack of consideration” issue) are without consequence, because plaintiffs misread the statutes. The statutes do not require a direct cause and effect relationship of insertion of money directly into a gaming machine and immediate operation of the machine.
 

 Instead, section 330b (fin. 2,
 
 ante)
 
 makes illegal a machine which “as a result of the insertion of any piece of money or coin or other object, or by any other means, such machine or device is caused to operate or may be operated . . . .” Section 330.1 provides an illegal slot machine is a machine that “is, or may be, used or operated in such a way that, as a result of the insertion of any piece of money or coin or other object such machine or device is caused to operate or may be operated or played, mechanically, electrically, automatically or manually . . . .”
 

 Thus, the statutes do not require that the machine begin operating directly upon insertion of a coin. Rather, the statutory definition also encompasses the situation where, as here, the player inserts money and then pushes buttons which operate the machine. When a Match 5 device operates by insertion of coins into the attached jukebox and selection of songs on the jukebox, the statutory definition of an illegal slot machine is met under both sections 330b and 330.1.
 

 Plaintiffs also contend the Match 5 Jukeboxes are not illegal slot machines because consideration is lacking, in that (1) some non-Match 5 jukeboxes charge a quarter per song and therefore the jackpot was paid by plaintiffs rather than the players, and (2) there was evidence customers could obtain a free chance to play by requesting a quarter from plaintiffs or from a bartender. Plaintiffs cite cases such as
 
 Cal. Gas. Retailers
 
 v.
 
 Regal Petroleum Corp.
 
 (1958) 50 Cal.2d 844 [330 P.2d 778], which held a promotional scheme by service station operators distributing tickets for drawings for prizes did not constitute an illegal
 
 lottery
 
 under section 319, because consideration was lacking, in that tickets were given away for free to anyone who asked for them and to many who did not ask for them, including persons away from the service stations, and the receipt of tickets or a prize was not dependent on the purchase of any merchandise or service.
 
 (Id.
 
 at pp. 851-862.)
 

 
 *781
 
 However, lottery cases (which are governed by § 319) are not controlling on the issue of illegal slot machines (governed by § 330 et seq.). Thus, lotteries are “ ‘ “separate and distinct things in law and fact” ’ ” from other forms of illegal gaming, and are subject to “'“different treatment and varying penalties.” ’ ”
 
 (Western Telcon, Inc.
 
 v.
 
 California State Lottery
 
 (1996) 13 Cal.4th 475, 484 [53 Cal.Rptr.2d 812, 917 P.2d 651] [construing Penal Code provisions].)
 
 [5]
 

 Moreover, even assuming for the sake of argument that consideration is a required element for illegal slot machines and that principles similar to lottery principles apply in this context (a point disputed by ABC), plaintiffs fail to show applicability of the “free chance to play” cases which found consideration lacking where free chances were given away. Here, plaintiffs assert free chances were given away because customers could ask for a free quarter to use on the Match 5 Jukeboxes. However, a minimum of a dollar was needed to operate the Match 5 Jukeboxes. Plaintiffs fail to explain this dichotomy. Thus, plaintiffs fail to support their position, and we have no further need to address
 
 Cal. Gas. Retailers, supra,
 
 50 Cal.2d 844, and no need to address the trial court’s factual findings that the purported “free chance to play” was not adequately made known to customers and was illusory and a subterfuge.
 

 We conclude plaintiffs fail to show any basis for reversal of the judgment based on the definition of slot machines.
 

 C.
 
 Section 330.5 Exemption
 

 Plaintiffs contend the Match 5 Jukeboxes are exempt under section 330.5. We disagree.
 

 Section 330.5
 
 [6]
 
 provides an exemption for music machines “in which there is deposited an exact consideration and from which in every case the customer obtains that which he purchases.”
 

 Plaintiffs contend the Match 5 Jukeboxes fall within this exemption because in every case the customer gets what he or she pays for—songs.
 
 *782
 
 ABC counters customers do not get what they pay for “in every case,” because some customers get more than what they paid for—the jackpot.
 

 We believe ABC has the better position. As the trial court noted, this construction reflects the Legislature’s recognition “that once the elements of chance and prize are added to a vending machine, the consideration paid from the player-purchaser’s perspective is no longer solely for the product.”
 

 Thus, sections 330b, subdivision (2), (fn. 2,
 
 ante)
 
 and 330.1 (in. 3,
 
 ante)
 
 make a machine illegal “irrespective of whether it may, apart from any element of hazard or chance also sell, deliver or present some merchandise, indication of weight, entertainment or other thing of value.” Plaintiff’s construction of section 330.5 is unreasonable, because it would contradict the foregoing language in sections 330b and 330.1. An otherwise illegal machine does not become legal merely because it plays music, gives a person’s weight, vends food, etc.
 

 We thus agree with the trial court that the Match 5 Jukebox is simply an “attempt to circumvent the gaming laws by adding the element of chance and prize to a vending machine. Once the element of chance is added, people are no longer paying just for the product regardless of the value given that product by the vender. From the perspective of the [Match 5 Jukebox] player-purchases, they may be paying for both the songs and the chance at winning. Indeed, many players may care little about the songs. Their main focus may be the game. This is particularly true when the machine requires that four songs be selected. The potential cash payoff may be more attractive than the four songs one is forced to select.”
 

 We disagree with plaintiffs’ contention that our construction renders section 330.5 fatally superfluous. According to plaintiffs, the exemption in section 330.5 must mean something different from a simple absence of the elements essential to finding an illegal slot machine, because otherwise there is no need for a separate statutory exemption. However, section 330.5 states on its face that it is “expressly” providing certain machines are not illegal. Thus, it is expressly providing what is implicit in other statutes. That the legality of such machines may be
 
 implicit
 
 in sections 330b and 330.1 (by virtue of the machines not meeting the definition of illegal machines) does not prevent the Legislature from expressly stating in a separate statute what is implicit in the defining statute.
 

 Plaintiffs contend the statutory language of sections 330b and 330.1, making machines illegal “irrespective” of whether they also deliver something of value apart from the element of chance, is intended to apply to a
 
 *783
 
 machine that, in addition to the chance to win something, also delivers some merchandise or music valued
 
 less
 
 than the consideration paid. According to plaintiffs, this would mean, for example, a machine that took a dollar, gave a video poker game with the chance to win something, and in addition gave a roll of mints worth only a dime. Plaintiffs assert their machines gave songs worth the full amount deposited.
 

 However, plaintiffs’ position in effect would impose a qualification on the statutes which is not apparent from the language of sections 330b and 330.1—the qualification that the value of the item sold equate exactly with the amount deposited. This would burden the courts with making economic decisions. Had the Legislature intended such a qualification, it could have and would have said so.
 

 Plaintiffs claim section 330.5 is vague and therefore must be construed in their favor.
 
 (Bale
 
 v.
 
 San Jose Police Department
 
 (1984) 158 Cal.App.3d 168, 173 [204 Cal.Rptr. 514] [construing exemption for antique slot machines].) However, the rule requiring strict construction of penal or civil forfeiture statutes “does not require ‘that [the statute] be strained and distorted in order to exclude conduct clearly intended to be within its scope’ it being ‘sufficient if the words are given their fair meaning in accord with the evident intent of [the legislature].’ [Citation.]”
 
 (People
 
 v.
 
 Shira
 
 (1976) 62 Cal.App.3d 442, 460 [133 Cal.Rptr. 94] [construing Penal Code provision relating to lotteries].)
 

 Since our construction presents no conflict between the Penal Code provisions, we have no occasion to address plaintiffs’ contention that under Government Code section 9605 (later-enacted statutes prevail over earlier-enacted, inconsistent statutes), section 330.5 would control over sections 330b and 330.1.
 

 Plaintiffs contend the statutes must be read in context of the technology available in 1950, when the statutes were enacted. Plaintiffs cite no authority for this proposition, and we therefore disregard it.
 
 (In re Marriage of Nichols
 
 (1994) 27 Cal.App.4th 661, 672-673, fn. 3 [33 Cal.Rptr.2d 13].)
 

 We conclude the Match 5 Jukeboxes are not exempt under section 330.5. We need not address ABC’s additional contention that section 330.5 is inapplicable because Match 5 Jukeboxes charge more than other jukeboxes.
 

 
 *784
 
 III.
 
 Flipperless Pinball Machines
 

 Plaintiffs contend the flipperless pinball machines are exempt as antiques under section 330.7.
 
 [7]
 
 We disagree.
 

 Section 330.7 provides an exemption for pinball machines more than 25 years old that are not used for gambling purposes while in the defendant’s possession.
 
 [8]
 

 The trial court found the pinball machines were more than 25 years old but found plaintiffs had failed to meet their burden to show the machines were not used for gambling purposes. The trial court rejected plaintiffs’ assertion that “gambling purposes” required a prize of money or other tangible prize and thus did not apply to the free games awarded by the flipperless pinball machines at issue in this case. The trial court concluded the free play awarded by the pinball machines was a sufficient prize to constitute gambling.
 

 A.
 
 Definition of “Gambling Purposes”
 

 Plaintiffs contend “gambling purposes” as used in section 330.7 must be construed to mean actual wagering or the possibility of winning money. That definition would exclude the flipperless pinball machines, which awarded only free games. We disagree with plaintiffs’ definition.
 

 
 *785
 
 Gambling purposes plainly includes the possibility of winning free games. Thus, section 330b, subdivision (2), (fn. 2,
 
 ante)
 
 defines an illegal slot machine as one in which the user may receive or become entitled to receive anything of value, including an “additional chance or right to use such slot machine or device . . . .” Section 330.1 (fn. 3,
 
 ante)
 
 defines an illegal slot machine as one in which the user may receive or become entitled to receive “anything of value,” including that the user “may secure additional chances or rights to use such machine or device . . . .” Section 330.2 provides that “thing of value,” as used in section 330.1, means “any money, coin, currency, check, chip, allowance, token, credit, merchandise, property, or any representative of value.” The Fourth Appellate District, addressing section 330b, said: “A reward of extended play by a video game for winning is a ‘thing of value’ within the meaning of [section 330b].”
 
 (Score Family Fun Center, Inc.
 
 v.
 
 County of San
 
 Diego,
 
 supra,
 
 225 Cal.App.3d at p. 1220.)
 

 Thus, it is clear from the statutes themselves that “gambling” is not limited to the opportunity to win money but includes the opportunity to win free games. Therefore, contrary to plaintiffs’ position, this is not a case for application of the principle that ambiguous penal provisions should be construed in the individual’s favor.
 

 Plaintiffs cite
 
 Knowles
 
 v.
 
 O’Connor
 
 (1968) 266 Cal.App.2d 31, 33 [71 Cal.Rptr. 879], asserting the sheriff in that case conceded there was no evidence the pinball machines had been used for “gambling” even though the machines awarded free games. However, the appellate court in that case said the machines at issue were games of skill rattier than chance and thus were not illegal for that reason.
 
 (Id.
 
 at p. 33.)
 

 Plaintiffs also cite
 
 Sharpensteen
 
 v.
 
 Hughes
 
 (1958) 162 Cal.App.2d 381, 383 [328 P.2d 54], asserting it found pinball machines that awarded free games were not used for “gambling,” even though they were games of chance. However, the appellate court in
 
 Sharpensteen
 
 concluded the machines were “predominantly games of skill” and for that reason did not constitute illegal machines.
 
 (Id.
 
 at pp. 386, 387.) Thus,
 
 Sharpensteen
 
 does not assist plaintiffs here.
 

 B.
 
 Evidence Re: Use
 

 Plaintiffs contend they met their burden to prove the machines were not used for gambling purposes. We disagree.
 

 Plaintiffs agree they had the burden of proof to show applicability of the antiques exemption.
 

 
 *786
 
 They contend they met their burden through Nichols’s testimony that he had no knowledge of the machines being used for gambling purposes. However, plaintiffs’ position is faulty because it is premised on their erroneous interpretation that “gambling purposes” must involve money as the prize. Thus, Nichols merely testified he had no knowledge of anyone betting money while using the machines. The testimony relied upon by plaintiff shows as follows:
 

 “Q. Do you have any knowledge that anyone gambled, if you will, using those machines? Not just playing them, but whether people were betting money on them while they were playing them.
 

 “A. [Nichols.] Not to my knowledge.”
 

 This does not constitute evidence that the machines were not used for gambling purposes. Similarly, plaintiffs do not satisfy their burden of proof by citing testimony of ABC witnesses who said they uncovered no direct evidence that the machines were used for a payoff of money or other prizes. Plaintiffs assert ABC investigative reports show no investigator ever observed anyone winning a free game. However, this does not satisfy plaintiffs’ burden of presenting proof that the machines were not so used in order to establish the antiques exemption.
 

 Plaintiffs thus fail to show they met their burden of proof, and we need not address plaintiffs’ assertion that no other evidence controverted their proof.
 

 We conclude the flipperless pinball machines are not exempt under section 330.7.
 

 Disposition
 

 The judgment is affirmed. ABC shall recover its costs on appeal.
 

 Raye, J., and Morrison, J., concurred.
 

 [1]
 

 Section 335a provides: “In addition to any other remedy provided by law any machine or other device the possession or control of which is penalized by the laws of this State prohibiting lotteries or gambling may be seized by any peace officer, and a notice of intention summarily to destroy such machine or device as provided in this section must be posted in a conspicuous place upon the premises in or upon which such machine or device was seized. Such machine or device shall be held by such officer for 30 days after such posting, and if no action is commenced to recover possession of such machine or device, within such time, the same shall be summarily destroyed by such officer, or if such machine or device shall be held by the court, in any such action, to be in violation of such laws, or any of them, the same shall be summarily destroyed by such officer immediately after the decision of the court has become final.
 

 “The superior court shall have jurisdiction of any such actions or proceedings commenced to recover the possession of such machine or device or any money seized in connection therewith.
 

 “Any and all money seized in or in connection with such machine or device shall, immediately after such machine or device has been so destroyed, be paid into the treasury of the city or county, as the case may be, where seized, said money to be deposited in the general fund.”
 

 [2]
 

 Section 330b, subdivision (2), provides: “Any machine, apparatus or device is a slot machine or device within the provisions of this section if it is one that is adapted, or may readily be converted into one that is adapted, for use in such a way that, as a result of the insertion of any piece of money or coin or other object, or by any other means, such machine or device is caused to operate or may be operated, and by reason of any element of hazard or chance or of other outcome of such operation unpredictable by him, the user may receive or become entitled to receive any piece of money, credit, allowance or thing of value or additional chance or right to use such slot machine or device, or any check, slug, token or memorandum, whether of value or otherwise, which may be exchanged for any money, credit, allowance or thing of value, or which may be given in trade, irrespective of whether it may, apart from any element of hazard or chance or unpredictable outcome of such operation, also sell, deliver or present some merchandise, indication of weight, entertainment or other thing of value.”
 

 [3]
 

 Section 330.1 provides: “Every person who manufactures, owns, stores, keeps, possesses, sells, rents, leases, lets on shares, lends or gives away, transports or exposes for sale or lease or offers to sell, rent, lease, let on shares, lend or give away or who permits the operation of or permits to be placed, maintained, used or kept in any room, space or building owned, leased or occupied by him or under his management or control, any slot machine or device as hereinafter defined, and every person who makes or permits to be made with any person any agreement with reference to any slot machine or device as hereinafter defined, pursuant to which agreement the user thereof, as a result of any element of hazard or chance, may become entitled to receive anything of value or additional chance or right to use such slot machine or device, or to receive any check, slug, token or memorandum, whether of value or otherwise, entitling the holder to receive anything of value, is guilty of a misdemeanor and shall be punishable by a fine of not more than one thousand dollars ($1,000) or by imprisonment in the county jail not exceeding six months or by both such fine and imprisonment. A slot machine or device within the meaning of Sections 330.1 to 330.5, inclusive, of this code is one that is, or may be, used or operated in such a way that, as a result of the insertion of any piece of money or coin or other object such machine or device is caused to operate or may be operated or played, mechanically, electrically, automatically or manually, and by reason of any element of hazard or chance, the user may receive or become entitled to receive anything of value or any check, slug, token or memorandum, whether of value or otherwise, which may be given in trade, or the user may secure additional chances or rights to use such machine or device, irrespective of whether it may, apart from any element of hazard or chance also sell, deliver or present some merchandise, indication of weight, entertainment or other thing of value.”
 

 [4]
 

 Sections 330b and 330.1, which overlap, were enacted in the same legislative session, under different bills. (Stats. 1950, First Ex. Sess. 1950, ch. 17, § 1, p. 452 [§ 330b]; Stats. 1950, First Ex. Sess. 1950, ch. 18, § 1, p. 454 [§ 330.1].) The legislative history reflects the view that enactment of both bills would pose no problem, because they did not conflict. (Legis. Counsel, Supp. Report on Assem. Bill No. 1 and Assem. Bill No. 34 (Apr. 20, 1950).) Since no conflict arises in this appeal, we have no need to consider the matter.
 

 [5]
 

 As indicated, we are sustaining the judgment on the grounds that the Match 5 Jukeboxes constituted illegal slot machines, and we therefore need not address the propriety of the trial court’s additional determination that these devices also constituted illegal lotteries.
 

 [6]
 

 Section 330.5 provides: “It is further expressly provided that Sections 330.1 to 330.4, inclusive, of this code shall not apply to music machines, weighing machines and machines which vend cigarettes, candy, ice cream, food, confections or other merchandise, in which there is deposited an exact consideration and from which in every case the customer obtains that which he purchases . . . .”
 

 Section 330.5 also exempts machines “which are predominantly games of skill, whether affording the opportunity of additional chances or free plays or not. . . .” The exemption for games of skill is not at issue in this case.
 

 [7]
 

 Section 330.7 provides: “(a) It shall be a defense to any prosecution under this chapter relating to slot machines, as defined in subdivision (2) of Section 330b, if the defendant shows that the slot machine is an antique slot machine and was not operated for gambling purposes while in the defendant’s possession. For the purposes of this section, the term ‘antique slot machine’ means a slot machine that is over 25 years of age.
 

 “(b) Notwithstanding Section 335a, whenever the defense provided by subdivision (a) is offered, no slot machine seized from any defendant shall be destroyed or otherwise altered until after a final court determination that such defense is not applicable. If the defense is applicable, the machine shall be returned pursuant to provisions of law providing for the return of property.
 

 “(c) It is the purpose of this section to protect the collection and restoration of antique slot machines not presently utilized for gambling purposes because of their aesthetic interest and importance in California history.”
 

 [8]
 

 Section 330.7 creates a defense to prosecution relating to slot machines and thus refers to the “defendant.” In the procedural posture of this case, the owners of the machines are the plaintiffs, not the defendants. Thus, in this case the statutory reference to “defendant” refers to plaintiffs.
 

 Plaintiffs appear to agree (because they have not argued to the contrary) that the statute’s reference to use for gambling purposes while in the defendant’s “possession” includes the constructive possession plaintiffs retained when they rented their machines out to taverns and other business establishments. ABC’s brief says the machines were not in plaintiffs’ possession but in the possession of the taverns (and therefore Nichols’s testimony that he had no knowledge of anyone using the machines for gambling purposes was without foundation). We assume ABC is referring to actual possession when it says the machines were not in plaintiffs’ possession.