[No. C038754. Third Dist. Feb. 4, 2003.]

JOHN TRINKLE, Plaintiff and Appellant, v.
CALIFORNIA STATE LOTTERY, Defendant and Respondent.

## COUNSEL

Estrada & Thomson and William D. Thomson for Plaintiff and Appellant.

Kronick, Moskovitz, Tiedemann & Girard, Paul W. Tozer, Robin Leslie Stewart and Susan R. Denious for Defendant and Respondent.

## OPINION

**BLEASE, Acting P. J.**—Plaintiff John Trinkle appeals from the judgment entered following the granting of defendant California State Lottery's (CSL) motion for summary judgment and denying Trinkle's cross-motion for summary judgment.

In his complaint and cross-motion for summary adjudication, Trinkle sought declaratory relief[1] to determine whether the CSL's use of electronic vending machines to dispense SCRATCHERS lottery tickets is an illegal use of slot machines. The Superior Court found the SCRATCHERS vending machines (SVM) are not illegal slot machines.

On appeal, Trinkle challenges this ruling. We find no error and affirm the judgment.

### FACTUAL BACKGROUND

The parties stipulated to the following description of the SVM: The vending machines used to dispense lottery tickets in CSL's SCRATCHERS games are electromechanical devices for dispensing SCRATCHERS lottery tickets. Each vending machine consists of a stand-alone cabinet containing a number of bins into which a stock of SCRATCHERS tickets may be loaded into each bin. A minimum of 100 or 250 tickets may be loaded in each bin, depending upon the price of the SCRATCHERS ticket in the game loaded in that bin. Each bin may contain a separate SCRATCHERS game, or more than one bin may be loaded with tickets for the same SCRATCHERS game.

---

[1]Trinkle also sought a temporary and permanent injunction to enjoin the CSL from using the electronic vending machines to dispense lottery tickets.

SCRATCHERS tickets in each bin are threaded from the top of the stack through an opening in the cabinet at the bottom of each bin, from which they may be retrieved by the purchaser. The path to that opening causes the tickets to pass in front of a window in the front of each bin, such that the face of the SCRATCHERS tickets is visible to the purchaser; in this way, the purchaser may know which SCRATCHERS game is being dispensed in each bin. A purchaser does not know whether any SCRATCHERS ticket visible in the window is a winning ticket.

The cost of each SCRATCHERS ticket is $1, $2, or $3, depending upon the game. A person desiring to purchase a SCRATCHERS ticket using a vending machine inserts a $1, $5, $10, or $20 bill into a bill acceptor that is installed in the cabinet. The SVM do not give change, and customers are so advised by a sign on the face of the cabinet. Each SVM has a locked cash compartment that holds a minimum of 500 bills.

A customer may elect to purchase the ticket from one or another of the bins by pushing a button in front of the window for that bin. The tickets are dispensed sequentially, according to the order in which they were loaded into the SVM bin. Nothing about the machine or its operation by the customer alters the order in which the tickets were arranged at the time they were printed. Once dispensed, the purchaser separates the ticket from the tickets remaining in the bin by tearing the ticket at its perforation.

The purchaser of the ticket(s) determines whether he or she has won a prize by "scratching" off the substance covering the symbol on the ticket(s). Depending upon the size of the prize awarded, the purchaser may redeem a winning ticket at the retail outlet where it was purchased or the ticket may be sent to the CSL for validation and redemption.

No SVM includes the whole of a SCRATCHERS game. Tickets for any SCRATCHERS game are distributed for sale in various locations throughout California. In any SCRATCHERS game, tickets may be sold by SVM as well as by other means, including hand delivery from a retail clerk. Winning SCRATCHERS tickets may award the holder a fixed sum of money or a chance in the "BIG SPIN" draw. Every SCRATCHERS game has a predetermined number of winning tickets distributed throughout the "deal."

The stock of tickets loaded into any bin of an SVM may include one or more tickets awarding varying prizes. Each SCRATCHERS ticket is covered with an opaque substance making it impossible for a customer to know whether any ticket that is visible in the window of an SVM is a winning ticket.

It is also undisputed by the parties that each ticket issued in a SCRATCH-ERS game bears a unique number distinguishing it from every other ticket in that game. By the time a SCRATCHERS ticket is ready to be loaded into an SVM, or sold by a human sales clerk, it has already been subjected to the only random selection process involved in a SCRATCHERS game. At the time a pack of SCRATCHERS tickets is loaded into an SVM, every ticket affords the purchaser an opportunity to win that is equal to that of every other ticket purchased in that particular game. Once loaded, and barring machine malfunction, each SVM dispenses a paper SCRATCHERS ticket and each ticket provides the purchaser with an opportunity to win a prize in a SCRATCHERS lottery game.

The SVM do not have, and are not linked with, any computer program that generates random numbers or symbols. The SVM's also do not have any other kind of mechanism or device that is capable of conducting a process of random selection or any other kind of chance selection in or by the machines. Nor do the SVM's dispense coins or currency or any tangible thing other than a SCRATCHERS ticket.

### DISCUSSION

■ Trinkle contends the SVM's used by the CSL are unlawful slot machines under Penal Code sections 330b and 330.1. The CSL contends the SVM's are ticket vending machines that only dispense lawful lottery tickets to the purchaser.

We agree with the CSL. The mere use of electronic vending machines to dispense lottery tickets does not transform the lawful sale of lottery tickets into an unlawful use of slot machines, where as here, the machines inject no additional element of chance into the determination or distribution of the winning lottery ticket.

### A.  *Standard of Review*

■ The question whether an SVM is a slot machine as defined by statute is a question of law to be determined de novo by the reviewing court. *(Western Telcon, Inc. v. California State Lottery* (1996) 13 Cal.4th 475, 488 [53 Cal.Rptr.2d 812, 917 P.2d 651] *(Western Telcon)*; *Trinkle v. Stroh* (1997) 60 Cal.App.4th 771, 777 [70 Cal.Rptr.2d 661] *(Trinkle)*; *Bell Gardens Bicycle Club v. Department of Justice* (1995) 36 Cal.App.4th 717, 742 [42 Cal.Rptr.2d 730].)

## B. *Constitutional and Statutory Authority*

■ State law prohibited all lotteries prior to 1984 (Cal. Const., art. IV, § 19, subd. (a); Pen. Code, §§ 319-329)[2] when the voters approved an initiative measure (Prop. 37, approved Nov. 6, 1984) known as the California State Lottery Act of 1984 (the Lottery Act or act). The act amended the California Constitution, authorizing the establishment of a state lottery while prohibiting "casinos of the type currently operating in Nevada and New Jersey." (Cal. Const., art. IV, § 19, subds. (d) & (e).)[3]

Additionally, the Lottery Act added provisions to the Government Code (Gov. Code, § 8880 et seq.),[4] which created the State Lottery Commission (§ 8880.15) and empowered the commission to operate the lottery. (*Horan v. State of California* (1990) 220 Cal.App.3d 1503, 1507 [270 Cal.Rptr. 194]; see §§ 8880.1, 8880.2, 8880.25 et seq.) The act defines a lottery game as "any procedure authorized by the commission whereby prizes are distributed among persons who have paid, or who have unconditionally agreed to pay, for tickets or shares which provide the opportunity to win those prizes." (§ 8880.12.)[5] Penal Code section 319 similarly defines lottery. (*Western Telcon, supra,* 13 Cal.4th at p. 484.) The elements of a lottery are (1) a prize, (2) which is distributed by chance, and (3) consideration paid for the opportunity to win the prize. (*Ibid.; Cal. Gas. Retailers v. Regal Petroleum Corp.* (1958) 50 Cal.2d 844, 851 [330 P.2d 778].)

The constitutional and statutory grant of authority to CSL is limited to lotteries. The CSL may not conduct games other than lotteries. (*Western Telcon, supra,* 13 Cal.4th at p. 483.) The distinction between lotteries and other forms of gambling is therefore crucial, and California law has long distinguished between lotteries and other forms of illegal gambling, treating gaming, betting, and lotteries as " ' "separate and distinct things in law and fact." ' " (*Western Telcon, supra,* 13 Cal.4th at p. 484, quoting *People v. Postma* (1945) 69 Cal.App.2d Supp. 814, 819 [160 P.2d 221].)

---

[2]"The Legislature has no power to authorize lotteries and shall prohibit the sale of lottery tickets in the State." (Cal. Const., art. IV, § 19, subd. (a).)

[3]California Constitution, article IV, section 19, subdivision (d) provides that "[n]othwithstanding subdivision (a), there is authorized the establishment of a California State Lottery." Subdivision (e) of section 19 provides "[t]he Legislature has no power to authorize, and shall prohibit casinos of the type currently operating in Nevada and New Jersey."

[4]All further section references are to the Government Code unless otherwise specified.

[5]The only express limitations on the types of lottery games the commission is authorized to operate are set forth in section 8880.28. Among these limitations are that "[n]o lottery game may use the theme of bingo, roulette, dice, baccarat, blackjack, Lucky 7's, draw poker, slot machines, or dog racing," and "[i]n games utilizing computer terminals or other devices, no coins or currency shall be dispensed to players from these computer terminals or devices." (§ 8880.28, subd. (a)(1) & (3); Stats. 1994, ch. 378, § 1, p. 2202.)

" 'Gaming may be defined as "the playing of any game for stakes hazarded by the players." A lottery may be defined as "a distribution of prizes by lot or chance." Betting may be defined as "promise[s] to give money or money's worth upon the determination of an uncertain or unascertained event in a particular way, and (unlike a lottery) may involve skill or judgment." ' " (*Western Telcon, supra,* 13 Cal.4th at pp. 484-485, quoting Blakey, *Gaming, Lotteries, and Wagering: The Pre-Revolutionary Roots of the Law of Gambling* (1985) 16 Rutgers L.J. 211, 214-215, fn. 8.)

While some banked games resemble some forms of lottery, these two categories of gambling are *mutually exclusive* of one another, distinguishable "not by the manner of play, but by the nature of the betting itself." (*Western Telcon, supra,* 13 Cal.4th at pp. 483, 487-488, italics omitted.) "In a lottery the operator does not bet against any of the participants, but merely offers up a prize for distribution to one or more of them. The operator, in other words, has no interest in the outcome of the chance event that determines the winner or winners—the 'game' or 'draw'—because neither the fact the prize will be disposed of, nor the value of the prize to be distributed, depends upon which, or how many, of the lottery entrants might win it. In a banking game, in contrast, the operator does compete with the other participants: 'he is the one against the many.' " (*Id.* at p. 488, quoting *People v. Ambrose* (1953) 122 Cal.App.2d Supp. 966, 970 [265 P.2d 191].) Thus, in a lottery, the operator distributes the prize or prizes to the winner or winners, while in a banked gambling game, the operator pays off all winning wagers and keeps all losing wagers. (*Western Telcon, supra,* 13 Cal.4th at pp. 485, 487.)

## C. *The Game of SCRATCHERS Is a Lottery*

Trinkle concedes the game of SCRATCHERS is a lottery and does not challenge the sale of SCRATCHERS tickets by retail clerks. However, the question whether the game of SCRATCHERS is a lottery is a necessary predicate determination to the question whether the use of SVM's to sell SCRATCHERS tickets transforms the sale of lottery tickets into an unlawful use of a slot machine. We therefore consider the predicate question.

In *Western Telcon, supra,* 13 Cal.4th at page 495, the Supreme Court rejected the claim that CSL's SCRATCHERS games are necessarily banking games. The court stated that "an instant scratch-off game is not a banking game, but a straightforward form of lottery, if it has the following characteristics: (1) all tickets are, when sold, either winning or losing tickets; nothing in the manner of 'play,' that is, determines whether the tickets buyer wins or loses; and (2) all tickets printed for the game are sold; the game does not end, that is, until all tickets have been sold. Under these conditions, the

operator knows in advance of play how much revenue will be produced and how much will be paid out in prizes. The operator thus has no interest in who buys a winning ticket and who a losing ticket, and does not wager against any of the ticket buyers. Such a scheme would be a lottery, not a banking game." (*Ibid.*, fn. omitted.) Without determining whether any or all of CSL's SCRATCHERS games met these criteria, the Supreme Court commented that "an instant scratch-off game *may* be a lottery under the traditional legal definition in Penal Code section 319." (*Id.* at p. 495, fn. 9, original italics.)

In a formal written opinion, the Attorney General considered the question left open by the Supreme Court, concluding that SCRATCHERS games, which include "a variety of off-line 'instant ticket games' " are legal lottery games. (81 Ops.Cal.Atty.Gen. 403, 414-415 (1998).) Applying the criteria set forth in *Western Telcon, supra,* 13 Cal.4th at page 495, the Attorney General reasoned, "the first condition is met since the manner of 'play' does not determine whether the ticket buyer wins or loses. Each ticket is a winning or losing ticket when sold. As for the second criterion, CSL conducts the games so that, to the extent reasonably possible, all tickets printed for the game are sold; each game does not end until all tickets have been sold. CSL thus knows in advance of play how much revenue will be produced and how much will be paid out in prizes. Accordingly, CSL does not have an interest in who buys a winning ticket and does not wager against the ticket buyers. Scratchers is a legal lottery." (81 Ops.Cal.Atty.Gen., *supra*, at p. 415.)

The undisputed facts in the record before us confirm the Attorney General's analysis. Every SCRATCHERS game has a predetermined number of winning tickets distributed throughout the "deal" and determined prior to distribution and sale. The winning tickets are randomly printed with the winning symbol which distinguishes them from every other ticket in that game and definitively determines whether or not the ultimate ticket holder will win a prize. At the time of manufacture, an opaque coating is applied to the ticket, concealing the winning symbol until the ticket is purchased and scratched off by the purchaser. The winning ticket, along with all other tickets, are placed in a fixed sequence and distributed for sale in various locations throughout California. Nothing in the manner of play determines whether the ticket buyer wins or loses and the operator, namely CSL, has no interest in who buys a winning or losing ticket. We therefore conclude the game of SCRATCHERS is a lottery.

We now address the question tendered for our determination, whether the mere use of a vending machine by CSL to dispense lottery tickets transforms

the lawful sale of a SCRATCHERS ticket into an unlawful use of a slot machine. We think the answer is clear, it does not.

### D. *SVM are Not Slot Machines*

The use or possession of a slot machine is prohibited by Penal Code section 330b, which defines a slot machine in pertinent part as any device "that is adapted . . . for use in such a way that, as a result of the insertion of any piece of money or coin or other object . . . such machine or device is caused to operate or may be operated, and *by reason of any element of hazard or chance or of other outcome of such operation unpredictable by him*, the user may receive or become entitled to receive any . . . thing of value . . . ." (Pen. Code, § 330b, subd. (2).)[6] Penal Code section 330.1 similarly defines a slot machine.[7]

---

[6]Penal Code section 330b, subdivision (2) provides in full:

"(2) Any machine, apparatus or device is a slot machine or device within the provisions of this section if it is one that is adapted, or may readily be converted into one that is adapted, for use in such a way that, as a result of the insertion of any piece of money or coin or other object, or by any other means, such machine or device is caused to operate or may be operated, and by reason of any element of hazard or chance or of other outcome of such operation unpredictable by him, the user may receive or become entitled to receive any piece of money, credit, allowance or thing of value or additional chance or right to use such slot machine or device, or any check, slug, token or memorandum, whether of value or otherwise, which may be exchanged for any money, credit, allowance or thing of value, or which may be given in trade, irrespective of whether it may, apart from any element of hazard or chance or unpredictable outcome of such operation, also sell, deliver or present some merchandise, indication of weight, entertainment or other thing of value."

[7]Penal Code section 330.1 provides: "Every person who manufactures, owns, stores, keeps, possesses, sells, rents, leases, lets on shares, lends or gives away, transports or exposes for sale or lease or offers to sell, rent, lease, let on shares, lend or give away or who permits the operation of or permits to be placed, maintained, used or kept in any room, space or building owned, leased or occupied by him or under his management or control, any slot machine or device as hereinafter defined, and every person who makes or permits to be made with any person any agreement with reference to any slot machine or device as hereinafter defined, pursuant to which agreement the user thereof, as a result of any element of hazard or chance, may become entitled to receive anything of value or additional chance or right to use such slot machine or device, or to receive any check, slug, token or memorandum, whether of value or otherwise, entitling the holder to receive anything of value, is guilty of a misdemeanor and shall be punishable by a fine of not more than one thousand dollars ($1,000) or by imprisonment in the county jail not exceeding six months or by both such fine and imprisonment. *A slot machine or device within the meaning of Sections 330.1 to 330.5, inclusive, of this code is one that is, or may be, used or operated in such a way that, as a result of the insertion of any piece of money or coin or other object such machine or device is caused to operate or may be operated or played, mechanically, electrically, automatically or manually, and by reason of any element of hazard or chance, the user may receive or become entitled to receive anything of value or any check, slug, token or memorandum, whether of value or otherwise, which may be given in trade, or the user may secure additional chances or rights to use such machine or device, irrespective of whether it may, apart from any element of hazard or*

Thus, the elements of a slot machine are (1) the insertion of money or other object which causes the machine to operate, (2) the operation of the machine is unpredictable and governed by chance, and (3) by reason of the chance operation of the machine, the user may become entitled to receive a thing of value.

Relying on *People ex rel. Lockyer v. Pacific Gaming Technologies* (2000) 82 Cal.App.4th 699, 703 [98 Cal.Rptr.2d 400] (*Pacific Gaming Technologies)*, Trinkle contends the SVM's are slot machines because they meet all elements of a slot machine, namely that by the insertion of money and purely by chance, the user may receive or become entitled to receive money. CSL contends the SVM's are not slot machines because they do not affect the element of chance which is fixed when the tickets are printed, grouped in bins, and distributed, some of which are loaded into the SVM's. We agree with CSL. Trinkle's analysis ignores the statutory language.

█ In construing statutory language, the courts should give meaning to every word of a statute and avoid a construction making any word surplusage. (*Reno v. Baird* (1998) 18 Cal.4th 640, 658 [76 Cal.Rptr.2d 499, 957 P.2d 1333].) █ With respect to the element of chance, Penal Code section 330b states, "by reason of any element of hazard or chance or of other outcome of *such operation* unpredictable by him . . . ." By using the words "such operation," the Legislature linked the element of chance to the operation of the machine, requiring that the machine itself determine the element of chance and become the object of play.

Without the element of chance incorporated into the operation of the machine, the machine is nothing more than a vending machine which dispenses merchandise for consideration. (*People v. Kay* (1940) 38 Cal.App.2d Supp. 759, 761 [102 P.2d 1110]; *Trinkle, supra,* 60 Cal.App.4th at p. 782 [" 'once the elements of chance and prize are added to a vending machine, the consideration paid from the player-purchaser's perspective is no longer solely for the product.' "]; *Pacific Gaming Technologies, supra,* 82 Cal.App.4th at pp. 706-707.) Thus, in both *Trinkle* and *Pacific Gaming Technologies,* the machines in question were found to be slot machines under

chance also sell, deliver or present some merchandise, indication of weight, entertainment or other thing of value." (Italics added.)

Penal Code sections 330b and 330.1 were enacted in the same legislative session, under different bills. (Pen. Code, § 330b, enacted by Stats. 1950, 1st Ex. Sess. 1950, ch. 17, § 1, p. 452; Pen. Code, § 330.1, enacted by Stats. 1950, 1st Ex. Sess. 1950, ch. 18, § 1, p. 454.) The legislative history indicates that these two sections did not conflict (Legis. Counsel, Supp. Report on Assem. Bill No. 1 and Assem. Bill No. 34 (Apr. 20, 1950); *Trinkle, supra,* 60 Cal.App.4th at p. 778, fn. 4) and no conflict arises in this appeal. We therefore treat the definitions as one and the same.

Penal Code section 330b because the outcome was dependent upon the element of chance that was generated by the machines themselves.

Indeed, a review of the history of slot machines discloses that vending machines used to dispense candy, fortunes, music, and other forms of consideration, were converted into gambling devices by adding the element of chance to the operation of the machine and the promise of cash payouts. (Rychlak, *Video Gambling Devices* (1990) 37 UCLA L.Rev. 555, 558-559.) These machines were referred to as slot machines. As noted by one commentator, one such machine known as "one-armed bandits clearly exhibited all three elements of gambling: the coin inserted by the player amounted to consideration, the spinning wheels rendered a result based on chance, and the winning gambler received a reward when coins fell into the receptacle." (*Id.* at p. 559.) While the technology of the old-fashioned slot machines may differ from the modern slot machines, the elements of gambling remain the same. The operation of the device (the spinning wheels or a computer program) renders the chance result.

Applying these principles to the operation of the SVM, we conclude these machines are not illegal slot machines within the meaning of Penal Code section 330b.[8] The SCRATCHERS tickets are printed with symbols that definitively determine whether the ultimate ticket holder will or will not win a game prize at a point in time before the tickets ever reach the retail locations where they are sold. The SVM's are stand-alone cabinets that contain a number of bins into which a stack of SCRATCHERS tickets are loaded in lots of 100 to 250 tickets. The tickets in each bin are threaded from the top of the stack through an opening in the cabinet at the bottom of each bin, from which they may be retrieved by the purchaser. If a player purchases his ticket from an SVM, the player obtains the ticket by inserting money into the machine and pushing a button, which releases the next ticket in sequence, according to the order in which it was printed and loaded into the SVM bin. Nothing about the machine or its operation by the customer alters the order in which the tickets were arranged at the time they were printed.

Barring malfunction, each SVM dispenses a SCRATCHERS ticket upon payment of consideration. The SVM's do not have computer programs that

---

[8]The Legislature has granted CSL express statutory authority to use instant ticket vending machines to dispense lottery tickets that meet certain specification. (§ 8880.335.) Trinkle concedes that section 8880.335 authorizes CSL to use electromechanical devices to dispense lottery tickets, and does not contend that SVM's fail to meet the statutory specifications of that section. He merely claims that section 8880.335 does not change the definition of a slot machine nor authorize CSL to operate slot machines. We agree, however in light of our conclusion that the SVM's are not slot machines, that Trinkle's argument does not advance his position.

generate random numbers or symbols, nor do they have any capability of conducting a process of random selection or any other kind of chance selection.

In sum, the SVM's vend SCRATCHERS tickets in the order the ticket is stacked in the bin. The purchaser inserts the purchase price and receives the next ticket(s) in line. The element of chance in a SCRATCHERS game is essentially twofold, involving the printing of the winning tickets and the placement of those tickets in a predetermined sequence among the other tickets. It is built into the game at the time of manufacture, not at the time of purchase or play. Therefore, the operation of an SVM does not in any way affect the game's element of chance.

Moreover, the SVM's do not convert a lottery game into a house-banked game. While lotteries are governed by chapter 9 of title 9 of the Penal Code, the provisions governing slot machines are found in chapter 10 of title 9, which governs gaming. As we stated earlier, gaming is distinguished from lotteries by the nature of the betting. In a lottery, the operator has no interest in the outcome. The prize is fixed at the outset and distributed among the winners. By contrast, in gaming, the operator has an interest in the outcome because the operator must pay off all winners, while retaining the stakes hazarded by the losers. (*Western Telcon, supra,* 13 Cal.4th at pp. 483, 487-488.)

An illegal slot machine is therefore a house-banked game in which the machine dispenses coins, currency, or another thing of value to the winning player, giving the operator an interest in the outcome. (See *Hotel Employees & Restaurant Employees Internat. Union v. Davis* (1999) 21 Cal.4th 585, 604, 608-612 [88 Cal.Rptr.2d 56, 981 P.2d 990].) The SVM's do not dispense coins, currency or any other thing of value other than the purchased SCRATCHERS ticket for which the purchaser pays consideration. There- fore, the SVM's do not convert what is otherwise a lawful lottery game where the operator has no interest in the outcome of the game, into a banked game in which the purchaser plays against the machine, making the owner of that machine an interested party.

We therefore conclude that because the SVM do not in any way involve the element of chance and do not pit the player against the machine, they are not slot machines.

Without citation of authority or analysis, Trinkle argues that CSL's past conduct supports his claim that the SVM are slot machines. He asserts that as a result of a 1996 memorandum prepared by a deputy attorney general

concluding SVM's are slot machines, CSL discontinued the use of the SVM's, placing them in storage, and that by discontinuing the use of the SVM's, CSL's conduct supports his claim the SVM's are slot machines.[9] We fail to see the logic of this argument.

■ Moreover, unless a party's brief contains a legal argument with citation of authorities on the point made, the court may treat it as waived and pass on it without consideration. (*People v. Stanley* (1995) 10 Cal.4th 764, 793 [42 Cal.Rptr.2d 543, 897 P.2d 481]; *Atchley v. City of Fresno* (1984) 151 Cal.App.3d 635, 647 [199 Cal.Rptr. 72].) Therefore, because Trinkle's claim is unsupported by citation of authority or legal analysis, we treat it as waived.

For the reasons discussed above, we find SCRATCHERS vending machines are not illegal slot machines.

### DISPOSITION

The judgment is affirmed. Respondent is awarded its costs on appeal. (Cal. Rules of Court, rule 26(a).)

Davis, J., and Morrison, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 21, 2003.

---

[9]We note that with enactment of section 8880.335, use of the SVM was resumed.