Filed 7/21/15  Csiza v. CarMax Auto Super Stores CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| VERONICA CSIZA, | D065916 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2013-00029104-CU-BC-CTL) |
| CARMAX AUTO SUPERSTORES CALIFORNIA, LLC, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Joel L. Pressman, Judge.  Affirmed.

Rosner, Barry & Babbitt, Hallen D. Rosner and Joshua C. Anaya for Plaintiff and Appellant.

Schlichter & Shonack, Kurt A. Schlichter, Steven C. Shonack and Jamie L. Keeton for Defendant and Respondent.

Plaintiff Veronica Csiza appeals from a summary judgment in favor of defendant CarMax Auto Superstores California, LLC (CarMax).  In this appeal, we are asked to

determine whether CarMax complied with certain statutory requirements in certifying one of its used cars prior to sale and in repurchasing the vehicle when Csiza, its customer, made a demand for correction or remedy of mechanical difficulties based on the warranty CarMax provided at the time of sale.

In her complaint, Csiza asserts four causes of action: (1) violation of the Song-Beverly Consumer Warranty Act (Song-Beverly Act; Civ. Code, § 1790 et seq.); (2) violation of the Consumers Legal Remedies Act (CLRA; Civ. Code, § 1750 et seq.); (3) violation of California's unfair competition law (UCL; Bus. & Prof. Code, § 17200 et seq.); and (4) common law fraud and deceit. Following discovery, CarMax brought a successful motion for summary judgment.

On appeal, Csiza's principal contention is that, because there are triable issues of fact regarding whether CarMax provided Csiza with "a completed inspection report indicating all the components inspected" as required by Vehicle Code section 11713.18, subdivision (a)(6) (section 11713.18(a)(6)), the court erred in granting summary judgment. Reviewing the matter de novo, we conclude that, based on the standards in summary judgment proceedings, CarMax met its initial burden of establishing compliance with section 11713.18(a)(6), and Csiza then did not meet her responsive burden of establishing a material issue of fact. We further conclude that the other

grounds asserted by Csiza for relief on appeal do not establish reversible error.

Accordingly, we will affirm the judgment in favor of CarMax.[1]

I.

FACTUAL AND PROCEDURAL BACKGROUND

" 'Because this case comes before us after the trial court granted a motion for summary judgment, we take the facts from the record that was before the trial court when it ruled on that motion.' " (*Wilson v. 21 Century Ins. Co.* (2007) 42 Cal.4th 713, 716-717-718.) We consider all the evidence in the moving and opposing papers, except that to which objections were made and sustained, liberally construing Csiza's evidence and resolving any doubts in the evidence in her favor. (*Id.* at p. 717; Code Civ. Proc., § 437c, subd. (c).)

A.      *Csiza Buys a Certified Used Car from CarMax*

CarMax is a national retailer of used cars. In early June 2012, Csiza purchased a used 2008 Subaru Outback (the Subaru) from CarMax at its San Diego store. CarMax provided an express limited 30-day warranty, and Csiza purchased an extended warranty.

---

[1]      " ' "Judicial notice is the recognition and acceptance by the court, for use by the trier of fact or by the court, of the existence of a matter of law or fact *that is relevant* to an issue in the action without requiring formal proof of the matter." ' " (*Unruh-Haxton v. Regents of University of California* (2008) 162 Cal.App.4th 343, 364, italics added.) Because we base our decision on the *evidence presented in this case* under summary judgment standards, neither the legislative history of section 11713.18(a)(6) nor the federal court decisions cited in the briefs provides assistance. Accordingly, we deny the pending requests for judicial notice by CarMax and by Csiza. (See *California Valley Miwok Tribe v. California Gambling Control Commission* (2014) 231 Cal.App.4th 885, 888 [court "declin[es] to take judicial notice of materials not 'necessary, helpful, or relevant' "].)

In preparing the Subaru for resale in December 2011, CarMax opened a repair order. This order lists the repair work CarMax performed after it received the vehicle. One of the entries on the order is described as "CIW," which is the " 'Certified Inspection Work' " that CarMax performed for purposes of its " 'Certified Quality Inspection' " (CQI). The CQI is a standard inspection that CarMax performs on all of its vehicles and covers all facets of a vehicle's condition, including the major systems and equipment.[2] The technicians who perform this inspection use a form standardized checklist as a guide (CQI/VQI checklist); it is a working document, and CarMax enters the handwritten entries and results of tests from the CQI/VQI checklist into an electronic database, which CarMax calls its "Vehicle Repair Order History." By maintaining a Vehicle Repair Order History for its cars, CarMax is able to track each repair, diagnosis or service performed on each of its cars from any CarMax location. After transferring the information from the CQI/VQI checklist to the Vehicle Repair Order History, CarMax does not keep the CQI/VQI checklist. In the case of the Subaru, for example, by the time of the litigation, CarMax no longer had the CQI/VQI checklist; rather, all that existed was the Vehicle Repair Order History, CarMax's primary internal record of the presale service process — which began with the late December service, including the CIW.

---

[2]    According to the testimony of the operations manager at CarMax's San Diego store, the CQI "includes a basic safety check of safety systems and of under-hood conditions, tires and lights. It includes a test drive that covers handling and braking, an interior inspection, an[] engine compartment check and an under-body inspection conducted on a lift."

4

CarMax does not sell to consumers any car that does not pass the CQI. The Vehicle Repair Order History indicates that, following the CIW (including the necessary repairs[3]), the Subaru passed CarMax's CQI.

CarMax provided Csiza with *two* reports of the CQI. The *first* report is a one-page preprinted document that the CarMax salesperson handed to Csiza and discussed with Csiza prior to her purchase of the Subaru (one-page report). At the top, the document contains the following language (in various fonts, some capitalization omitted): "CQI CarMax [illegible[4]] Certified Quality Inspection"; "This vehicle has passed the rigorous CarMax 125-Point Quality Inspection"; and "Your signed CQI certificate can be found in your vehicle's glove compartment." The following language appears lower on the page (in smaller font): "We check over 125 points including (but not limited to): [four columns of identified components]." Csiza was not confused by this document, she discussed the inspection with the salesperson, and when she asked the salesperson a question the salesperson was unable to answer, the salesperson arranged for a more knowledgeable CarMax representative to respond to her inquiry. Prior to buying the Subaru, Csiza understood that CarMax had inspected the components listed on the one-page report and that "they check[ed] out okay."

---

[3]     CarMax invested 18.7 man hours and costs of at least $629.75 as part of the CIW performed on the Subaru.

[4]     The copy in the record on appeal is illegible. We have no evidence that suggests the copy given to Csiza was illegible.

The *second* report is a two-page preprinted document (two-page report). At the top of the first page, it contains the following language (in various fonts, some capitalization omitted): "CQI CarMax [illegible (see fn. 4)] Certified Quality Inspection"; "This is to certify that this vehicle has passed the rigorous CarMax Certified Quality Inspection." Immediately below is the statement, "We check over 125 points including (but not limited to): [four columns, on the remainder of the first page and almost all of the second page, of the identical components listed on the one-page document]." The bottom of the second page contains handwritten numerals above the preprinted words "Stock Number" and a handwritten signature above the preprinted words "Certified by." Csiza found the two-page report in the glove compartment of the Subaru after she had purchased the vehicle and driven it home.

B.      *Csiza's Claims Against CarMax*

Within a few weeks of the purchase and sale — i.e., by the middle of June 2012 — the Subaru began to pull to the right. Under the warranty, Csiza arranged for CarMax to check out the car. Over the next few months, Csiza continued to experience mechanical difficulties with the Subaru, returning to CarMax on several occasions for additional service.

On January 7, 2013, Csiza filed the underlying action against CarMax, seeking $100,000 in actual damages, $300,000 in punitive damages and equitable relief based on allegations of statutory violations under the Song-Beverly Act, the CLRA and the UCL and common law fraud.

6

Three days later on January 10, 2013, Csiza demanded that CarMax provide a "proper remedy or correction" under the CLRA.[5] CarMax responded by agreeing to provide "full restitution" and requesting documentation and dollar amounts for the categories of refunds CarMax had agreed to provide in exchange for the return of the Subaru. Csiza provided the requested information, and at the end of February 2013 CarMax paid everything she requested in conjunction with her return of the Subaru.

Csiza proceeded with her lawsuit. One cause of action (Song-Beverly Act) is based on the allegation that CarMax breached the express written warranty in various regards. The remaining three causes of action (CLRA, UCL and fraud) are all premised on the allegation that, in the sale of the Subaru, CarMax did not comply with section 11713.18(a)(6), which provides in relevant part:

> "(a) It is a violation of this code for the holder of any dealer's license issued under this article to . . . sell a used vehicle as 'certified' or use any similar descriptive term in the advertisement or the sale of a used vehicle that implies the vehicle has been certified to meet the terms of a used vehicle certification program if any of the following apply: [¶] . . . [¶] (6) Prior to sale, the dealer fails to provide the buyer with a completed inspection report indicating all the components inspected."

More specifically, Csiza alleged that CarMax violated section 11713.18(a)(6) by not providing her with a statutorily compliant "completed inspection report."

---

5     Before a consumer may commence an action for damages under the CLRA, the consumer must first notify the potentially responsible person of the specific violations alleged under Civil Code section 1770 and demand that the person "correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of Section 1770." (Civ. Code, § 1782, subd. (a)(2).) Csiza's complaint, filed prior to the demand, did not seek money damages under the CLRA.

C.      *CarMax's Summary Judgment*

Following discovery, CarMax filed a motion for summary judgment or, in the alternative, for summary adjudication. In support, CarMax filed a memorandum of points and authorities, evidence (declarations and exhibits), a request for judicial notice and a separate statement of undisputed material facts. In opposition, Csiza filed a memorandum of points and authorities, evidence (declarations and exhibits), a request for judicial notice and a response to CarMax's separate statement that included material facts in dispute. CarMax replied, submitting a memorandum of points and authorities, a summary of CarMax's separate statement and Csiza's response, a response to Csiza's additional material facts in dispute and objections to some of the evidence submitted by Csiza in her opposition.[6]

In late January 2014, the court issued a tentative ruling granting the motion for summary judgment and entertained oral argument. At the hearing, counsel for Csiza orally interposed an evidentiary objection to the declaration of Robert Gonsalves (Gonsalves declaration), CarMax's operations manager for the San Diego store, submitted by CarMax in support of its motion. (See *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 531-532 [Code Civ. Proc., § 437c, subd. (d) allows for oral objections at the hearing].) After further argument, the court continued the hearing in order to allow the parties to

---

[6]     Because our disposition of the issues in this appeal depends on an analysis of the evidence in support of and in opposition to the motion, we will present and discuss the relevant evidence in detail in the Discussion, *post.*

8

submit additional briefing, in particular regarding the admissibility of the Gonsalves declaration.

In addition to further briefing, the parties also submitted additional requests for judicial notice, additional evidence and objections thereto. Following receipt and consideration of these submissions, in mid-March 2014 the court issued a detailed tentative ruling based on the original and supplemental briefing (granting CarMax's motion) and entertained additional oral argument. The court confirmed its tentative ruling and granted summary judgment in favor of CarMax.

The court entered judgment in favor of CarMax in early April 2014, and Csiza timely appealed.

## II.

## DISCUSSION

On appeal, Csiza presents a number of arguments in support of a reversal of the judgment. We will first discuss the cause of action under the Song-Beverly Act and Csiza's failure to establish a triable issue of material fact. We will then explain how Csiza did not meet her burden in opposing CarMax's motion for summary judgment with regard to CarMax's alleged noncompliance with section 11713.18(a)(6) and the effect of such conclusion on each cause of action (Song-Beverly Act, CLRA, UCL and fraud).

A.      *Summary Judgment Principles*

We review de novo the issues raised by Csiza in this appeal. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 (*Aguilar*).) We must affirm on any correct legal theory, so long as the parties had an opportunity to address it in either the trial or

9

appellate court. (*Schmidt v. Bank of America, N.A.* (2014) 223 Cal.App.4th 1489, 1498; see *Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329-330 [appealed judgment correct on any theory will be affirmed, regardless of trial court's stated reasons].) The judgment of the trial court is presumed correct, and Csiza (as the appellant) has the burden of establishing reversible error. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

A defendant is entitled to a summary judgment on the basis that the "action has no merit" (Code Civ. Proc., § 437c, subd. (a)) only where the court is able to determine from the evidence presented that "there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" (*id.*, subd. (c)). A cause of action "has no merit" if one or more of the elements of the cause of action cannot be established, or an affirmative defense to the cause of action can be established. (*Id.*, subd. (*o*).)

Thus, a defendant like CarMax has the burden of *persuasion* that one or more elements of the cause of action at issue "cannot be established" or that "there is a complete defense to that cause of action." (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, *supra*, 25 Cal.4th at pp. 849, 850, 853-854.) In attempting to meet this burden, the defendant has the initial burden of *production* to make a prima facie showing of the nonexistence of any triable issue of material fact. (*Aguilar*, at p. 850.) If the defendant meets this burden, then the burden of *production* shifts to the plaintiff to establish the existence of a triable issue of material fact. (*Id.* at pp. 850-851.)

In this appeal from the grant of a summary judgment, therefore, we determine first whether CarMax's showing has established facts which justify a judgment in its favor; and if the motion prima facie supports a judgment, we then determine whether Csiza's opposition demonstrates a triable material issue of fact. (*Garcia v. W&W Community Development, Inc.* (2010) 186 Cal.App.4th 1038, 1042.) Where the responsive evidence " 'gives rise to no more than mere speculation[,]' " however, it " 'cannot be regarded as substantial, and is insufficient to establish a triable issue of material fact.' " (*Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1271.)

B.     *Csiza Did Not Meet Her Burden of Establishing Reversible Error with Regard to the Song-Beverly Act Cause of Action*

" 'The Song-Beverly Act is a remedial statute designed to protect consumers who have purchased products covered by an express warranty.' " (*Martinez v. Kia Motors America, Inc.* (2011) 193 Cal.App.4th 187, 191.) We will assume without deciding that the 30-day warranty CarMax provided Csiza qualifies as an express warranty for purposes of the Song-Beverly Act.[7]

As applicable to Csiza's claim, the Song-Beverly Act provides in part: "[I]f the manufacturer or its representative in this state does not service or repair the goods to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either replace the goods or reimburse the buyer in an amount equal to

---

[7]     An express warranty is defined as: "A written statement arising out of a sale to the consumer of a consumer good pursuant to which the manufacturer, distributor, or retailer undertakes to preserve or maintain the utility or performance of the consumer good or provide compensation if there is a failure in utility or performance . . . ." (Civ. Code, § 1791.2, subd. (a)(1).)

the purchase price paid by the buyer . . . ."[8] (Civ. Code, § 1793.2, subd. (d)(1).) Otherwise, "[a] buyer of consumer goods who is damaged by the manufacturer's failure to comply with the [Song-Beverly A]ct may bring an action to recover damages and other legal and equitable relief ([Civ. Code, ]§ 1794, subd. (a)), and if the buyer proves the violation was willful, the judgment may also include a civil penalty which shall not exceed two times the amount of actual damages. ([Civ. Code, ]§ 1794, subd. (c).)" (*Robertson v. Fleetwood Travel Trailers of California, Inc.* (2006) 144 Cal.App.4th 785, 798 (*Robertson*).) Csiza has alleged damages, equitable relief and civil penalties.

To recover under the Song-Beverly Act, Csiza has the burden of proving: the Subaru "had a defect or nonconformity covered by the express warranty"; the Subaru "was presented to [CarMax] for repair"; and CarMax "did not repair the defect or nonconformity after a reasonable number of repair attempts." (*Robertson*, *supra*, 144 Cal.App.4th at pp. 798-799.) In her complaint, Csiza alleges that the "defects that existed at the time of the sale" of the Subaru "substantially impair[ed] the use, value, and safety of the vehicle[,]" in breach of the express warranty CarMax provided. In addition, Csiza alleges that "Car[M]ax expressly warranted that the [Subaru] was in Car[M]ax 'certified' condition, but it was not."

On appeal, however, in response to a judgment in favor of CarMax, Csiza substantively mentions the Song-Beverly Act or her claim under it on only three

---

8    The Song-Beverly Act provides similar protections with respect to new vehicles in subdivision (d)(2) of Civil Code section 1793.2.

12

occasions, as follows: (1) even following the rescission under the CLRA (which Csiza does not dispute), Csiza may still "seek damages, including Song-Beverly [Act] damages and punitive damages, because the provisions and remedies of the CLRA are not exclusive," citing Civil Code section 1752; (2) "Statutory damages may be sought in a Song-Beverly [Act] cause of action as a matter of right. CarMax completely failed to address this issue and relies solely on their [*sic*] tender [of restitution]"; and (3) "CarMax has also not addressed the statutory right under [the] Song-Beverly [Act] to seek treble damages," citing Civil Code section 1794, subdivisions (c) and (e).[9]

With regard to Csiza's first point, we agree that under California law the provisions and remedies of the CLRA are not exclusive. (Civ. Code, § 1752.) However, that statement alone — and that is the entirety of Csiza's first point — is insufficient to present an argument on appeal. Without more, we are unable to determine whether, *in the context of the facts of this case* with citations to evidence in the record, Csiza's claim for damages under the Song-Beverly Act survived the rescission. An opening brief "must [¶] . . . [¶] . . . support each point by argument and, if possible, by citation of authority[] and [¶] [s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." (Cal. Rules of Court, rule 8.204(a)(1)(B) & (C).) For this reason, Csiza forfeited appellate review of this

---

9     In her complaint, Csiza also alleges relief under the Song-Beverly Act based on CarMax's purported violation of section 11713.18(a)(6)'s requirements related to providing a "completed inspection report." We will discuss this issue in part II.D.1., *post*, after our analysis of CarMax's alleged noncompliance with section 11713.18(a)(6) in part II.D.2., *post*.

13

argument.  (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 (*Cahill*) [when appellant fails to support a point " ' "with reasoned argument and citations to authority, we treat the point as waived" ' "]; *Trinkle v. California State Lottery* (2003) 105 Cal.App.4th 1401, 1413 (*Trinkle*) ["unless a party's brief contains a legal argument with citation of authorities on the point made, the court may treat it as waived and pass on it without consideration"].)  Likewise, Csiza has forfeited appellate review of her second and third points — "[s]tatutory damages" and "treble damages" — by failing to present applicable argument and authority.  (*Cahill*, at p. 956; *Trinkle*, at p. 1413.)  At a minimum, Csiza does not tell us what "[s]tatutory damages" she is claiming, and Csiza's cited authorities do not allow for the recovery of "treble damages."[10]

The need for more from Csiza is evident, given the trial court's (and CarMax's) reliance on *Dominguez v. American Suzuki Motor Corp.* (2008) 160 Cal.App.4th 53.  In *Dominguez*, the Court of Appeal affirmed a summary judgment in favor of the defendant in a Song-Beverly Act cause of action, ruling that the mere offer to repurchase the vehicle satisfied the defendant's statutory obligation, *defeating any claim for damages*.  (*Id.* at pp. 58-60.)  As *Dominguez* explains, where a plaintiff fails to present *evidence* of the

---

[10]    Csiza claims that Civil Code section 1794, subdivisions (c) and (e) allow for treble damages.  However, these statutory provisions only allow for "a civil penalty" not to exceed "*two times*" *the amount of actual damages* upon an appropriate showing (*id.*, subd. (c), italics added; see *Robertson*, *supra*, 144 Cal.App.4th at p. 798 [civil penalty "shall not exceed two times the amount of actual damages"]) — a showing that Csiza does not mention, let alone attempt to establish.  Subdivision (e) is further inapplicable, because it applies only new vehicles (Civ. Code, § 1794, subd (e)(1), citing *id.*, § 1793.2, subd. (d)(2) [limited to "a new motor vehicle"]), yet the Subaru was not a new vehicle.

14

defendant's willful failure to "either replace the goods or reimburse the buyer" (Civ. Code, § 1793.2, subd. (d)(1)) — a prerequisite to the damages claimed by the plaintiff in *Dominguez* and by Csiza here (Civ. Code, § 1794, subd. (c)) — the plaintiff cannot defeat an otherwise proper motion for summary judgment. (*Dominguez*, at p. 59.) Thus, because CarMax reimbursed Csiza for all the damages she claimed as part of the rescission and Csiza did not present evidence of any other financial loss, the trial court correctly determined that Csiza did not meet her burden of presenting *evidence* of a triable issue of fact related to a willful failure to comply with the Song-Beverly Act or the warranty. (*Aguilar*, *supra*, 25 Cal.4th at pp. 850-851.)

For these reasons, Csiza did not meet her burden of establishing a triable issue of material fact with regard to the Song-Beverly Act cause of action.

In closing, Csiza argues that the trial court erred in entering judgment in favor of CarMax, because Csiza (not CarMax) was the prevailing party under the breach of warranty claim. According to Csiza, she submitted evidence "detailing the many serious, never repaired defects in the [Subaru], which started within about a week of purchase," yet CarMax's defense to the Song-Beverly Act claim is based solely on having paid Csiza all of her damages. Although Csiza's argument is less than clear, Csiza has forfeited appellate review of the issues for at least two reasons. First, Csiza does not provide any record references in support of her statement that she submitted evidence of "the many serious, never repaired defects." (*Lonely Maiden Productions, LLC v. Golden Tree Asset Management, LP* (2011) 201 Cal.App.4th 368, 384 (*Lonely Maiden Productions*) [" 'It is the duty of counsel to refer the reviewing court to the portion of the record which

15

supports appellant's contentions on appeal. [Citation.] If no citation "is furnished on a particular point, the court may treat it as waived." ' "].)[11] Second, Csiza did not first present this issue or argument to the trial court. (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184, fn. 1; *Rand v. Board of Psychology* (2012) 206 Cal.App.4th 565, 590 [" 'It is well established that a party may not raise new issues on appeal not presented to the trial court.' "].)

C.      *Csiza Did Not Meet Her Burden of Establishing Reversible Error as to CarMax's Compliance with Section 11713.18(a)(6)*

Once again, section 11713.18(a)(6) establishes a violation of the Vehicle Code if a licensed automobile dealer markets a used vehicle as " 'certified' " and "fails to provide the buyer with a completed inspection report indicating all the components inspected" prior to sale. On appeal, Csiza argues two allegedly triable issues of material fact with regard to CarMax's alleged noncompliance with this statutory provision: (1) whether

---

[11]     We ordered the parties' original briefs returned for correction and refiling. (Cal. Rules of Court, rule 8.204(e)(2)(A).) The stated reason for the order was that the briefs did not contain record references to the *evidence* on which they relied, in violation of California Rule of Court, rule 8.204(a)(1)(C). The original briefs contained many citations to a separate statement or a response to a separate statement, yet citations in such documents are not *evidence* of anything; they are "mere assertion[s]." (*Stockinger v. Feather River Community College* (2003) 111 Cal.App.4th 1014, 1024.) Csiza did not take advantage of this opportunity with regard to the alleged defects, instead submitting a corrected brief that cites only to two pages of her response to CarMax's separate statement — not to any *evidence*.

16

CarMax provided Csiza with a completed inspection report; and, if so, (2) whether

CarMax provided the report prior to the sale of the Subaru.[12]

CarMax presented a significant portion of its evidence on these issues in the

Gonsalves declaration. The trial court overruled Csiza's evidentiary objections to the

Gonsalves declaration — rulings that Csiza challenges on appeal. We will discuss the

evidentiary rulings and, thus, the admissibility of the Gonsalves declaration, before

considering the evidence in support of and in opposition to CarMax's motion.

1.  *Csiza Did Not Meet Her Burden of Establishing Reversible Error in Overruling Csiza's Evidentiary Objections to the Gonsalves Declaration*

On appeal, Csiza argues that, based on Gonsalves's deposition testimony,

Gonsalves lacks the requisite personal knowledge for the court to have considered and

relied on his declaration testimony in support of CarMax's motion.

The trial court ruled on eight specific "Supplemental Evidentiary Objections" by

Csiza — sustaining in part one and overruling the remainder. However, in her brief on

appeal, Csiza does not refer to any specific objection or ruling by the trial court and, in

fact, fails to cite to us (and we have been unable to locate) where in the record she

submitted eight objections to the Gonsalves declaration. Instead, she presents the generic

argument that, because Gonsalves lacked personal knowledge of the facts in his

_____

[12]    In her complaint, Csiza alleged five violations of the statute. By not raising the
other three alleged violations in her opening brief, Csiza has forfeited appellate review of
them. (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6 ["Although our review of a
summary judgment is de novo, it is limited to issues which have been adequately raised
and supported in [the opening] brief."].) Csiza did not raise the additional three
arguments in her opposition to CarMax's motion in the trial court either.

17

declaration, the Gonsalves declaration "should be disregarded in its entirety." (Initial capitalization omitted.) In her brief on appeal, without mentioning the standard of review or citing any legal authority or necessary record references, Csiza devotes nine pages mostly to quotes from Gonsalves's deposition — without any suggesting how this additional testimony may have resulted in reversible error in admitting the Gonsalves declaration.

Csiza's presentation is not helpful and violates basic rules of appellate procedure by failing to support each point by argument, citation of legal authority and reference to the record on appeal. (Cal. Rules of Court, rule 8.204(a)(1)(B) & (C).) For these reasons, Csiza has forfeited appellate review of the admissibility of the Gonsalves declaration. (*Cahill*, *supra*, 194 Cal.App.4th at p. 956; *Trinkle*, *supra*, 105 Cal.App.4th at p. 1413; *Lonely Maiden Productions*, *supra*, 201 Cal.App.4th at p. 384.) This is a necessary result given that we are unable to review the merits of the court's rulings in the context of the specific objection(s) made to the specific testimony in the Gonsalves declaration.

In any event, even if we consider the intent behind Csiza's incomplete presentation, there is no merit in Csiza's generic argument that Gonsalves lacked personal knowledge of the facts in his declaration. At the time CarMax submitted the Gonsalves declaration, Gonsalves was the operations manager of CarMax's San Diego store. He had been employed by CarMax for almost two years, during which time he gained experience in the areas of CarMax's sales, operations and maintenance/service. He explained CarMax's policies and procedures concerning the creation, execution and storage of

18

certain documents created in the ordinary course of CarMax's business — including those scanned into and stored as electronic documents in a CarMax database. Gonsalves reviewed and testified about specific documents at issue in the litigation, including: the CQI/VQI checklist; the 30-day limited warranty; the one-page report; the two-page report; and the Vehicle Repair Order History. From his review of these documents, Gonsalves testified as to the presale inspections and preparations, the sale and the post-sale repair history of the Subaru with CarMax.

Although we review the trial court's grant of summary judgment de novo, we review the trial court's rulings on evidentiary objections to evidence in support of the motion for an abuse of discretion. (*Miranda v. Bomel Construction Co., Inc.* (2010) 187 Cal.App.4th 1326, 1335.) A trial court abuses its discretion only when, in its exercise, the ruling is arbitrary or the trial court " 'exceeds the bounds of reason, all of the circumstances before it being considered.' " (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 281 [admissibility of evidence].)

We begin with the understanding that "the testimony of a witness concerning a particular matter is inadmissible unless he has personal knowledge of the matter." (Evid. Code, § 702, subd. (a).) In this context, personal knowledge means "a present recollection of an impression derived from the exercise of the witness's own senses." (*Alvarez v. State of California* (1999) 79 Cal.App.4th 720, 731.) Indeed, a witness's own testimony may be sufficient to establish the requisite personal knowledge (Evid. Code, § 702, subd. (b)); and here, Gonsalves testified that he had personal knowledge of the facts in his declaration. "[A]ny 'qualified witness' who is knowledgeable about the

19

documents may lay the foundation for introduction of business records — the witness need not be the custodian or the person who created the record." (*Jazayeri v. Mao* (2009) 174 Cal.App.4th 301, 324; see Evid. Code, § 1271, subd. (c).)

We are aware that Gonsalves did not participate in the transaction in which CarMax sold the Subaru to Csiza. However, he presented sufficient evidence of his personal knowledge of *the business records associated with the transaction* — combined with his training and experience in how such documents are created and maintained in the normal course of business — such that the court did not exceed the bounds of reason in allowing his testimony of the events based on those documents.[13] Finally, Csiza has cited no authority, and we are aware of none, that precludes Gonsalves's personal knowledge to have been based on his review of specifically identified documents (each of which was submitted as an exhibit).

Accordingly, Csiza has not met her burden in presenting or establishing error related to the court's evidentiary rulings directed to the Gonsalves declaration. We will next consider the evidentiary showing made by the parties.

2. *In response to CarMax's Prima Facie Showing, Csiza Did Not Meet Her Burden of Establishing a Triable Issue of Material Fact as to CarMax's Compliance with Section 11713.18(a)(6)*

Section 11713.18(c)(6) requires that the completed inspection report "indicating all the components inspected" be provided "[p]rior to sale." Csiza argues on appeal that the two-page report is noncompliant, because (1) CarMax did not provide it to Csiza prior

---

[13] Csiza did not object to the admissibility of the documents themselves.

20

to the sale of the Subaru, and (2) it does not indicate all the components inspected. In so doing, Csiza ignores the *one-page report* — despite the trial court's express ruling that the one-page report satisfied section 11713.18(a)(6). On this basis alone, we could deem Csiza to have forfeited our consideration of whether CarMax complied with section 11713.18(c)(6) in the sale of the Subaru to Csiza. (*Cahill*, *supra*, 194 Cal.App.4th at p. 956; *Trinkle*, *supra*, 105 Cal.App.4th at p. 1413.) Nonetheless, we will deal with Csiza's arguments to the extent they apply to the one-page report.[14]

Relying on evidence that CarMax did not provide the two-page report until *after* the sale, Csiza argues that the trial court erred in ruling that CarMax complied with section 11713.18(c)(6). However, as she acknowledges in her brief on appeal, Csiza received the one-page report prior to the sale. Such acknowledgement is understandable given CarMax's presentation to the trial court of the following uncontradicted evidence *prior* to the sale of the Subaru: CarMax's salesperson provided Csiza with the one-page report; Csiza discussed the inspection described on the one-page report with the salesperson, including specific points in the report; when Csiza asked a question that the salesperson was unable to answer, the salesperson located another CarMax representative with specific knowledge regarding the item on the one-page report; and, substantively, Csiza understood that CarMax had inspected the components listed on the one-page report and, in her own words, "they check[ed] out okay."

---

14    Once again, the one-page report and the two-page report list the same "points" subject to inspection.

21

Thus, the remaining consideration is whether Csiza established a triable issue of material fact with regard to whether the one-page report qualified as a "completed inspection report indicating all the components inspected" for purposes of section 11713.18(a)(6).

Csiza argues that the report is incomplete and inaccurate in the following regards: (1) "CarMax admits that it inspects more points than are listed on the [report]"; (2) the report "states that CarMax's inspection 'includ[ed]' but was 'not limited to' the points listed on the [report]"; (3) the report "lists components that are not and could not be on [the Subaru]"; (4) "CarMax does not know how many points it actually inspected on the [Subaru], making a representation CarMax performed a '125 point inspection' inaccurate"; and (5) "CarMax does not use the [report] during the pre-purchase inspection process."

We are aware that certain documentary evidence regarding the scope of CQI is not consistent. The CIW entry (on the Vehicle Report History for the Subaru) refers to CarMax's "*125+ point* 'Certified Quality Inspection' "; the one-page report (that CarMax gave Csiza prior to purchase) refers to a "*125-Point* Quality Inspection," advising that CarMax "check[ed] *over 125 points*, including (but not limited to) . . ."; and the two-page report (that CarMax placed in the glove compartment of the Subaru) advises that CarMax "check[ed] *over 125 points*, including (but not limited to) . . . ." (Italics added.) In the context of this evidence, we understand Csiza's arguments to be that the inspection report was noncompliant with section 11713.18(a)(6) either because CarMax inspected more

22

than 125 components or because the report listed components that CarMax had not inspected.

Initially, we reject Csiza's suggestion that, by completing a *more thorough* inspection than disclosed in the report (i.e., by inspecting *more* components than disclosed), CarMax's inspection report did not comply with section 11713.18(a)(6)'s requirement that it indicate "all the components inspected." Csiza did not allege such noncompliance in her complaint.[15] "If [Csiza] wished to rely upon unpleaded theories to defeat summary judgment, [s]he was required to move to amend the complaint prior to the hearing on [CarMax's] motion." (*Leibert v. Transworld Systems, Inc.* (1995) 32 Cal.App.4th 1693, 1699.)

With regard to the remaining arguments, CarMax correctly counters that Csiza offers no *evidence* to support these contentions in the sale of the Subaru to Csiza.[16]

_____

[15]    The theories of noncompliance that Csiza pleaded are alleged at paragraphs 10 and 30 of the complaint and include:  CarMax did not provide Csiza with "a completed inspection report," an inspection report prior to the sale, "a copy of CarMax's CQI checklist" prior to sale or "a certification checklist specific to [the Subaru]"; the two-page report Csiza received "was generic, and not specific to the [Subaru]"; CarMax did not "disclose the defective nature of the [Subaru]"; and CarMax could not call the Subaru "[c]ertified when CarMax does not oversee, supervise and/or enforce any 'certification' standards."  Even if we assume that these allegations are broad enough to include noncompliance by inspecting *more* components than disclosed (although we do not see it), as we explain in the text *post*, Csiza failed to present *evidence* in support of the allegations.

[16]    Instead, Csiza argues that the entire Gonsalves declaration is inadmissible, apparently contending that if Gonsalves's testimony is not considered, then CarMax cannot make a prima facie showing of the nonexistence of a triable issue of fact. However, as we explained in part II.C.1, *ante*, Csiza did not meet her burden of

Indeed, in support of its motion for summary judgment, as part of its initial burden to show the nonexistence of any triable issue of material fact (*Aguilar*, *supra*, 25 Cal.4th at pp. 850), CarMax presented the following discovery responses from Csiza (Code Civ. Proc., § 437c, subd. (b)(1)), which prima facie establish that Csiza had no *evidence* either that CarMax inspected more than 125 components or that CarMax inspected components that were not listed:

"REQUEST [FOR ADMISSION] NO. 36:

"Admit that [CarMax] checks over 125 points on the [Subaru] during its presale inspection.

"RESPONSE TO REQUEST NO. 36:

"Objection. [Csiza] is without sufficient information to admit or deny this request.

"FURTHER RESPONSE TO REQUEST NO. 36:

"A reasonable inquiry concerning the matter in the request has been made and the information known or readily obtainable is insufficient to enable [Csiza] to admit the matter."

\* \* \* \* \*

"REQUEST [FOR ADMISSION] NO. 60:

"Admit that [the one-page report] lists all of the components [CarMax] inspected on the [Subaru].

"RESPONSE TO REQUEST NO. 60:

"Objection. [Csiza] is unaware whether [CarMax] performed a certification process, and, furthermore, is not familiar with [CarMax's] certification process. Therefore, she is without sufficient knowledge to admit or deny this request.

---

establishing that the Gonsalves declaration was inadmissible — the necessary predicate for Csiza's argument.

"[FURTHER] RESPONSE TO REQUEST NO. 60:

"A reasonable inquiry concerning the matter in the request has been made and the information known or readily obtainable is insufficient to enable [Csiza] to admit the matter."

      \*      \*      \*      \*      \*

"SPECIAL INTERROGATORY NO. 46:

"Please describe each component of the [Subaru] that [Csiza] concedes [CarMax] inspected during its certification process.

"RESPONSE TO SPECIAL INTERROGATORY NO. 46:

"Objection.  [Csiza] objects to this Special Interrogatory as being overbroad.  Subject to and without waiving any objections, [Csiza] responds as follows:  [Csiza] found a generic, pre-printed 'CQI Car[M]ax Certified Quality Inspection' document in her glove box after purchase. Discovery is continuing.

"FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 46:

"Objection.  [Csiza] objects to this Special Interrogatory as being overbroad.  Subject to and without waiving any objections, [Csiza] responds as follows:  [Csiza] does not concede that CarMax inspected any component of the Subaru.  [Csiza] was not present at the time of CarMax's alleged certification inspection.  Further, CarMax did not provide [Csiza] a completed inspection report for the Subaru prior to purchase.  The generic pre-printed 'CQI CarMax Certified Quality Inspection' document CarMax placed in her glove box does not identify the specific components inspected on the Subaru."

      \*      \*      \*      \*      \*

"SPECIAL INTERROGATORY NO. 47:

"Please describe each component of the [Subaru] that [Csiza] claims defendant [CarMax] represented it inspected during its certification process, but did not.

"RESPONSE TO SPECIAL INTERROGATORY NO. 47:

"Objection.  [Csiza] objects to this Special Interrogatory as being overbroad.  [Csiza] is unaware whether [CarMax] performed a certification

25

process, and, furthermore, is not familiar with [CarMax's] certification process.

"FURTHER RESPONSE TO SPECIAL INTERROGATORY NO. 47:

"Objection. [Csiza] objects to this Special Interrogatory as being overbroad. Subject to and without waiving any objections, [Csiza] responds as follows: [Csiza] does not have any information as to which component of the Subaru CarMax actually inspected to sell the vehicle as certified. [Csiza] was not present at the time of CarMax's alleged certification inspection. Further, CarMax did not provide [Csiza] a completed inspection report for the Subaru prior to purchase. The generic, pre-printed 'CQI CarMax Certified Quality Inspection' document CarMax placed in her glove box does not identify the specific components inspected on the Subaru."

The significance of these responses is that "a moving defendant may rely on factually devoid discovery responses to shift the burden of proof pursuant to [Code of Civil Procedure] section 437c, [former] subdivision (*o*)(2) [now subdivision (p)(2)[17]]." (*Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 590.) Once the burden shifts, of course, "the plaintiff must set forth *the specific facts* which prove the existence of a triable issue of material fact." (*Ibid.*, italics added; see *Aguilar*, *supra*, 25 Cal.4th at pp. 850-851).

_____

[17] "A defendant . . . has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established . . . . Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto. The plaintiff . . . may not rely upon the mere allegations or denials of its pleadings to show that a triable issue of material fact exists *but, instead, shall set forth the specific facts showing that a triable issue of material fact exists* as to that cause of action or a defense thereto." (Code Civ. Proc., § 437c, subd. (p)(2), italics added.)

Here, however, once the burden shifted to Csiza, she was unable to provide *evidence* (as opposed to the rhetoric and hyperbole in her appellate brief) of any component that was either listed on the report but not inspected or inspected but not listed on the report.  For this reason, Csiza did not meet her burden of establishing a triable issue of material fact as to CarMax's alleged noncompliance with section 11713.18(a)(6) in the sale of the Subaru to Csiza.[18]

D.    *Given Her Failure to Establish a Triable Issue of Material Fact as to CarMax's Alleged Noncompliance with Section 11713.18(a)(6), Csiza Did Not Meet Her Burden of Establishing a Triable Issue of Material Fact with Regard to Any of the Causes of Action*

Agreeing with the trial court that Csiza did not meet her burden of establishing CarMax's noncompliance with section 11713.18(a)(6), we will now apply this conclusion to the four causes of action.

1.    *The Song-Beverly Act*

Within the cause of action under the Song-Beverly Act Csiza there is a one-sentence allegation that states "Car[M]ax expressly warranted that the vehicle was in Car[M]ax 'certified' condition, but it was not."

To the extent Csiza contends that this allegation is based on the various theories of noncompliance with section 11713.18(a)(6) set forth at footnote 15, *ante*, because we have concluded that Csiza has not met her burden of establishing a triable issue of

_____

18    We emphasize the limited nature of this ruling.  It is based on the record and briefing in this case, which involves only the transaction in which CarMax sold the Subaru to Csiza in June 2012.  It is not a ruling, or even a comment, on what Csiza contends is a companywide policy or procedure.

material fact as to CarMax's alleged noncompliance with section 11713.18(a)(6), she cannot prove a necessary element in the Song-Beverly Act cause of action.

To the extent Csiza contends this allegation is based on other theories related to the " 'certified' condition" of the Subaru, Csiza forfeited her right to appellate review by neither identifying what such theories might be nor presenting evidence in support of such theories or argument with legal authority as to her entitlement to relief based on such theories. (*Cahill*, *supra*, 194 Cal.App.4th at p. 956; *Trinkle*, *supra*, 105 Cal.App.4th at p. 1413.)

2. *CLRA*

The CLRA, Civil Code section 1750 et seq., " ' " 'established a nonexclusive statutory remedy for "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." ' " ' " (*Pierce v. Western Surety Co.* (2012) 207 Cal.App.4th 83, 91.) Civil Code section 1780 provides the remedies for any consumer who suffers damage as a result of any of the deceptive business practices enumerated in Civil Code section 1770.

In her complaint in this action, Csiza averred a number of deceptive business practices based on CarMax's alleged noncompliance with section 11713.18(a)(6) in the sale of the Subaru to Csiza. More specifically, Csiza alleged that the various theories of noncompliance with section 11713.18(a)(6) set forth at footnote 15, *ante*, violated subdivisions (a)(2), (a)(3), (a)(5), (a)(7), (a)(9), (a)(14), and (a)(16) of Civil Code section 1770. Thus, the predicate act for *each* of the alleged violations of the CLRA is

28

CarMax's purported noncompliance with section 11713.18(a)(6) in the sale of the Subaru to Csiza.

Because we have concluded that Csiza has not met her burden of establishing a triable issue of material fact as to CarMax's alleged noncompliance with section 11713.18(a)(6), she cannot prove a necessary element in her CLRA cause of action.

      3.    *UCL*

The UCL defines "unfair competition" as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [the false advertising law (Bus. & Prof. Code, § 17500 et seq.)]." (*Id.*, § 17200.)  The UCL has a broad scope that allows in part for " 'violations of other laws to be treated as unfair competition that is independently actionable.' " (*In re Tobacco Cases II* (2007) 41 Cal.4th 1257, 1266; see *Daugherty v. American Honda Motor Co., Inc.* (2006) 144 Cal.App.4th 824, 837 ["By proscribing unlawful business practices, the UCL borrows violations of other laws and treats them as independently actionable."].)

In her UCL cause of action, Csiza alleged that CarMax's unfair business practices include "the various prohibitions contained in" the Song-Beverly Act, CLRA and California Vehicle Code, as well as state law fraud and deceit.  More specifically, Csiza alleged that CarMax's purported noncompliance with section 11713.18(a)(6) — based on the same theories of noncompliance set forth at footnote 15, *ante* — are the unlawful business practices.

Once again, therefore, because we have concluded that Csiza has not met her burden of establishing a triable issue of material fact as to CarMax's alleged noncompliance with section 11713.18(a)(6), she cannot prove a necessary element in her UCL cause of action.

4.      *Fraud and Deceit*

In her cause of action for fraud, Csiza asserts claims based on both misrepresentations and nondisclosures.  The elements of a cause of action for fraud based on misrepresentation are:  a misrepresentation; knowledge of its falsity; intent to induce reliance; justifiable reliance; and resulting damage.  (*City of Industry v. City of Fillmore* (2011) 198 Cal.App.4th 191, 211.)  The elements of a cause of action for fraud based on nondisclosure are:  intentional concealment or suppression of a material fact, by a party under a duty to disclose, with knowledge that the other party would not have acted as it did if it had known of the fact, and resulting damage.  (*Moncada v. West Coast Quartz Corp.* (2013) 221 Cal.App.4th 768, 775.)

In her cause of action for fraud, Csiza incorporated all of the allegations from her statutory (Song-Beverly Act, CLRA, UCL) causes of action.  She did not allege any additional facts that she contended were misrepresentations or omissions.  Thus, to the extent Csiza considers the alleged misrepresentations or omissions to be based on the various theories of noncompliance with section 11713.18(a)(6) set forth at footnote 15, *ante*, because we have concluded that Csiza has not met her burden of establishing a triable issue of material fact as to CarMax's alleged noncompliance with

30

section 11713.18(a)(6), she cannot prove a necessary element in her fraud cause of action.

To the extent Csiza intended to base her fraud claim on other misrepresentations or omissions, Csiza has forfeited her right to appellate review of the summary judgment of the fraud cause of action. (*Cahill*, *supra*, 194 Cal.App.4th at p. 956; *Trinkle*, *supra*, 105 Cal.App.4th at p. 1413; *Lonely Maiden Productions*, *supra*, 201 Cal.App.4th at p. 384.) In her brief, Csiza's entire argument is five paragraphs and (even inferring facts that are not included) provides at best: CarMax is "familiar with the law regarding advertising and selling 'certified' vehicles"; the one-page report "is a generic form with no individualized information [and] only half the parts inspected listed" and "simply does not comply" with the law regarding advertising and selling " 'certified' " vehicles; CarMax's companywide disclosure system is "fraudulent," because CarMax "fail[s] to keep the CQI/VQI checklists"; California law allows for punitive damages to discourage corporate wrongdoing; and "Mr. Blackwell" is CarMax's managing agent at the San Diego store and responsible for implementing CarMax corporate policy. (Some capitalization omitted.) Within these five paragraphs, Csiza presents no argument, legal authority,[19] *evidence* or record references on which to base a reversal. Indeed, none of

---

19      In support of the generic statement that California allows for punitive damages, Csiza cites two cases — neither of which deals with fraud in the sale of a used vehicle certified pursuant to the Vehicle Code. One discusses reasonable proportionality between punitive damages and actual or potential harm to a plaintiff, where the reprehensibility of the corporate conduct is a consideration (*Johnson v. Ford Motor Co.* (2005) 35 Cal.4th 1191, 1207 [evidence established that, in reselling automobile, car manufacturer concealed automobile's history of transmission repairs]), and the other discusses the use

Csiza's statements deal with her purchase of the Subaru; they appear to be directed to CarMax's alleged general business practices, even though this is an individual (not representative) action based on one specific transaction.

DISPOSITION

The judgment is affirmed.  CarMax is entitled to its costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)


IRION, J.

WE CONCUR:


McCONNELL, P. J.


HUFFMAN, J.

---

of punitive damages to deter socially unacceptable acts and to discourage objectionable corporate policies (*Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 820 [breach of disability insurance policy].)