Filed 7/16/24  In re William R. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re WILLIAM R., JR., a Person Coming Under the Juvenile Court Law. | B321977 (Los Angeles County Super. Ct. No. 22CCJP01687) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. Y.B.L., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Philip L. Soto, Judge.  Affirm lower court's order; deny DCFS's motion to dismiss.

Liana Serobian, by appointment of the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Sarah Vesecky, Deputy County Counsel, for Plaintiff and Respondent.

Janette Freeman Cochran, by appointment of the Court of Appeal, for minor William R., Jr.

## INTRODUCTION

Y.B.L. (mother) and W.R. (father) have one child together, William R. (born August 2020). The Los Angeles County Department of Children and Family Services (DCFS) filed a dependency petition on behalf of William, which was sustained by the juvenile court under Welfare and Institutions Code section 300, subdivisions (b)(1) and (j).[1] Mother appeals certain jurisdictional findings and dispositional orders made by the juvenile court. Because mother does not challenge the jurisdictional finding as to count b-1, we decline to exercise our discretion to review the remaining jurisdictional findings. We further conclude that the challenged dispositional orders are supported by substantial evidence. Accordingly, we affirm the orders below.

As the parties are familiar with the facts and procedural history of the case, we do not restate those details in full here. Below, we discuss only the facts and history as needed to resolve—and provide context for—the issues presented on appeal.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

## RELEVANT BACKGROUND

On December 16, 2021, DCFS filed a section 300 petition claiming jurisdiction over William pursuant to section 300, subdivisions (b)(1) and (j). Count b-1 alleged mother had physically abused William's paternal half-sister, K.R., including pulling K.R.'s hair and striking her, leaving bruises. Count b-2 alleged mother emotionally abused K.R. by threatening to poison her, destroying her belongings, and demonstrating aggressive behavior toward her which caused K.R. to exhibit symptoms of anxiety, depression, and self-harm behaviors. Counts b-3 and b-6 alleged a history of domestic violence between mother and father, including an incident in 2020 in which mother was arrested and/or convicted of inflicting corporal injury on a cohabitant (Pen. Code, § 273.5) and battery (Pen. Code, § 242).[2] Count b-5 alleged mother has unstable housing and reported on numerous occasions that she is unable to safely care for William. Counts j-1, j-2, and j-3 all related to prior dependency actions involving the paternal half-sibling, K.R.

On December 17, 2021, the Orange County juvenile court conducted the initial hearing. The court detained William from mother, placed him in father's custody, and ordered supervised visitation with the child. The jurisdiction hearing was held on April 28 and 29, 2022, in Orange County juvenile court. At the conclusion of the hearing, the court struck counts b-5 and j-2 from the petition, as well as the checked boxes on the form petition asserting jurisdiction under section 300, subdivisions (b)(1)(B) and (b)(1)(C). The juvenile court also ordered the case transferred to Los Angeles County for disposition.

---

[2] Count b-4 was alleged against father only and is not relevant to this appeal.

The Los Angeles County juvenile court conducted the disposition hearing on July 21, 2022.  The juvenile court declared William a dependent of the court, removed him from mother's custody, placed him with father, and ordered DCFS to provide the family with services and the parents to participate in services.  The juvenile court also ordered a case plan for mother which included a requirement that she undergo a mental health evaluation.  The court also ordered that the evaluator be provided with the documents supporting any true findings made in the instant case or the companion case concerning paternal-half sibling K.R.

On March 1, 2023, the juvenile court filed a custody order granting father sole physical and legal custody of the child, and granting mother monitored visits.  The court terminated jurisdiction over William that same day.

**DISCUSSION**

A.    *Mootness*

The parties agree that the trial court's termination of jurisdiction on March 1, 2023, renders this case moot and our review is discretionary under *In re D.P.* (2023) 14 Cal.5th 266 (*D.P.*).  Several factors may be considered in deciding whether to review jurisdictional findings in an otherwise moot appeal.  (*Id.* at pp. 283, 285–286.)  These factors include whether the finding "'could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or . . . "could have other consequences for [the appellant], beyond jurisdiction."'"  (*Id.* at p. 283; see also *In re J.K.* (2009) 174 Cal.App.4th 1426, 1431–1432 [holding the Court of Appeal has discretion to consider an appeal of jurisdictional findings where they could impact future proceedings].)  Other factors include whether the

4

jurisdictional finding is based on particularly pernicious or stigmatizing conduct and the reason why the appeal became moot.  (*D.P.*, *supra*, 14 Cal.5th at pp. 285–286.)  "The factors above are not exhaustive, and no single factor is necessarily dispositive of whether a court should exercise discretionary review of a moot appeal." (*Id*. at p. 286.)

As we find the findings against mother are stigmatizing and may play a role in future court proceedings regarding custody and visitation, we will exercise our discretion to reach the merits of her appeal.


B.    *Jurisdictional Findings*

Mother challenges the sufficiency of the evidence supporting some of the jurisdictional findings made by the juvenile court.  Mother does not challenge the sufficiency of the evidence supporting jurisdiction under count b-1.  Instead, mother's counsel repeatedly claims the juvenile court dismissed count b-1 of the petition at the jurisdictional hearing.  This claim is a misrepresentation of the record.

The form used for section 300 petitions contains four potential bases for jurisdiction under section 300, subdivision (b)(1) which correspond to statutory subdivisions (b)(1)(A) through (b)(1)(D).  The form contains empty boxes next to each of these bases for jurisdiction.  A party filing the form petition can check one or more of these boxes to indicate which basis for jurisdiction is being asserted under section (b)(1).  The original petition filed in this action contains checked boxes indicating jurisdiction was being asserted under subdivisions (b)(1)(A), (b)(1)(B), and (b)(1)(C).  At the jurisdictional hearing, the juvenile court noted there did not appear to be any basis for jurisdiction under subdivision (b)(1)(B) and no party had any objection to this checked box being stricken on the form petition.  The

5

juvenile court then proceeded to strike the checked box asserting jurisdiction under subdivision (b)(1)(C) as well, stating, "The Court will strike—as the Court kind of questioned about the first page of (b)(1), the last two boxes, both the boxes that relate to the willful or negligent failure, those prongs will be struck." The court then proceeded to strike counts b-5 and j-2 of the petition in their entirety. The juvenile court did not strike or otherwise dismiss count b-1. These amendments are reflected on the interlineated petition attached to the June 13, 2022, disposition report. The interlineated petition clearly shows count b-1 was not struck either in whole or in part.

There is no question that the juvenile court and all parties understood that jurisdiction had been sustained under count b-1. At the July 21, 2022, dispositional hearing, the juvenile court expressly noted, "we've already got a true finding made on the b-1 count." No party objected to or corrected this statement.

Mother cites to three documents in support of her claim that count b-1 was dismissed: (1) the original section 300 petition, (2) pages 108 through 113 of the transcript of the dispositional hearing, and (3) the juvenile court's April 29, 2022, minute order memorializing the jurisdictional hearing. None of these materials suggest the juvenile court dismissed count b-1. The original petition merely establishes that count b-1 was asserted against mother. Pages 108 through 113 of the dispositional hearing transcript do not mention or relate to count b-1 in any way. Instead, those pages contain argument by mother's counsel concerning the recommendation that mother undergo a psychological evaluation, as well as the juvenile court's ultimate dispositional orders. Nothing in these pages indicates or suggests that count b-1 was dismissed.

6

This leaves the April 29, 2022, minute order as the sole basis for mother's claim that count b-1 was dismissed. The minute order states, in pertinent part: "Court will strike portions of Petition as stated on the record—parts of B1, B5 and J2." In stating that parts of "B1" were stricken, the juvenile court was referring to the striking of the two checked boxes asserting jurisdiction under section 300, subdivision (b)(1), and was not referring to count b-1. Any potential ambiguity in this order can be immediately resolved by reference to the transcript from the jurisdictional hearing and the amended interlineated petition. Even if we were to interpret the order as referring to count b-1, the order indicates only that "portions" of the count were stricken. Nothing in this order suggests count b-1 was "expressly dismissed" in its entirety as mother now claims on appeal.

We note that at the time mother filed her opening brief, the record did not yet include the transcript from the second day of the jurisdictional hearing, which expressly explained what claims were being struck from the petition. However, the interlineated amended petition and disposition hearing transcripts were available to mother's counsel and directly contradict any claim that count b-1 was dismissed or stricken.

Moreover, the relevant transcript from the jurisdictional hearing was included in a supplemental volume of reporter's transcripts filed in this court on October 17, 2023. This transcript was available to counsel at the time mother's reply brief was filed in March 2024. Yet mother's reply brief simply ignores the transcript and claims instead that "The record is confusing as to what and how the Orange County Juvenile Court sustained or dismissed in all or in part count b-1 of the petition, given that the matter was heard in two different counties and transferred to Los Angeles County after the jurisdictional hearing." This assertion is made without any citation to the

7

record and is expressly contradicted by the jurisdictional hearing transcript. The claims made by mother's counsel regarding count b-1 are simply inaccurate and devoid of any support in the record.

"An attorney is an officer of the court and owes the court a duty of candor." (*Levine v. Berschneider* (2020) 56 Cal.App.5th 916, 921.) ""Honesty in dealing with the courts is of paramount importance, and misleading a judge is, regardless of motives, a serious offense."' [Citation.] 'Counsel should not forget that they are officers of the court, and while it is their duty to protect and defend the interests of their clients, the obligation is equally imperative to aid the court in avoiding error and in determining the cause in accordance with justice and the established rules of practice.' [Citations.]" (*Perry v. Kia Motors America, Inc.* (2023) 91 Cal.App.5th 1088, 1095–1096 (*Perry*); see also Bus. & Prof. Code, § 6068, subd. (d); State Bar Rules Prof. Conduct, rule 3.3(a)(1).) Parties may be deemed to forfeit an issue where they have misrepresented the record or failed to provide a complete summary of the relevant facts. (*Perry*, *supra*, 91 Cal.App.5th at pp. 1095–1096.)

As a by-product of counsel's refusal to acknowledge that the court sustained jurisdiction under count b-1, mother does not challenge this jurisdictional finding on appeal. As the court sustained jurisdiction over William under count b-1, we need not determine whether substantial evidence supported jurisdiction under other counts asserted in the petition. "As long as there is one unassailable jurisdictional finding, it is immaterial that another might be inappropriate." (*In re Ashley B.* (2011) 202 Cal.App.4th 968, 979.) "[A]n appellate court may decline to address the evidentiary support for any remaining jurisdictional findings once a single finding has been found to be supported by the evidence. [Citations.]" (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1492.) As the juvenile court had

jurisdiction over William under count b-1, we decline to address the sufficiency of the juvenile court's other jurisdictional findings.

C. *Dispositional Findings*

Mother also challenges the juvenile court's dispositional orders. Specifically, mother contends removal of William from her custody was not supported by substantial evidence. Mother also contends the court erred in ordering her to undergo a psychiatric evaluation and in ordering that case files from the prior proceedings concerning K.R. be provided to the evaluator. Additionally, mother argues the juvenile court failed to make findings on the record in support of its dispositional orders as required by section 361, subdivision (c). We address these arguments separately.

1. *Applicable Law and Standard of Review*

The purpose of the dependency law "is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm." (§ 300.2, subd. (a); see *In re A.F.* (2016) 3 Cal.App.5th 283, 289; *In re Giovanni F.* (2010) 184 Cal.App.4th 594, 599.)

We review challenges to a juvenile court's dispositional findings for substantial evidence. (*In re R.T.* (2017) 3 Cal.5th 622, 633.) "'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to

9

the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court.""'" (*In re I.J.* (2013) 56 Cal.4th 766, 773.) We review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence such that a reasonable trier of fact could find the order is appropriate. (*Ibid.*; accord, *In re I.C.* (2018) 4 Cal.5th 869, 892.)

2. *Mental Health Evaluation*

Mother challenges the court's dispositional order requiring her to undergo a mental health evaluation. In particular, mother objects to the court's order directing that the evaluator be provided with the materials on which the sustained findings in K.R.'s case were based. Mother claims the juvenile court's orders violated her First, Fourth, and Fourteenth Amendment rights. While mother quotes the text of these Amendments in full, she does not provide any legal authority discussing these Amendments or showing how they were violated by the juvenile court. "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as [forfeited]." (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785; see also *People v. Smith* (2003) 30 Cal.4th 581, 616, fn. 8 ["We need not consider . . . a perfunctory assertion unaccompanied by supporting argument"]; *Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2002) 100 Cal.App.4th 1066, 1078; *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.) We conclude mother has forfeited her argument regarding the constitutionality of the court's dispositional order by failing to

adequately develop it on appeal.[3] (See *Limon v. Circle K Stores Inc.* (2022) 84 Cal.App.5th 671, 687; *Trinkle v. California State Lottery* (2003) 105 Cal.App.4th 1401, 1413; see also *Bunzl Distribution USA, Inc. v. Franchise Tax Bd.* (2018) 27 Cal.App.5th 986, 998.) Accordingly, we do not reach the merits of mother's argument on this point.

Mother also contends a mental health evaluation was inappropriate in this case because mother's mental health was not an "underlying allegation" in any of the counts in the petition. "At the dispositional hearing, the juvenile court must order child welfare services for the minor and the minor's parents to facilitate reunification of the family. [Citations.] The court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accord with this discretion. [Citations.]" (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006.) "At disposition, the juvenile court is not limited to the content of the sustained petition when it considers what dispositional orders would be in the best interests of the children. [Citations.] Instead, the court may consider the evidence as a whole." (*In re Briana V.* (2015) 236 Cal.App.4th 297, 311.)

There is ample evidence in the record supporting the need for mother to undergo a mental health evaluation in this case. On December 14, 2021, a social worker noted there were "concerns for the mother's possible mental health, in that the mother has called the LA County child abuse hot line on ten different occasions reporting she cannot care for William." Mother had a history of anger issues, including an arrest for domestic violence in 2020, and sustained findings that she physically and emotionally abused William's half-sibling. These issues continued to be a concern, as evidenced by social worker

---

[3] We note mother's argument relies in large part on the incorrect assertion that count b-1 was dismissed at the jurisdictional hearing.

reports that mother was repeatedly harassing William's pediatrician and office staff by calling them multiple times a day in May and June 2022 to demand that they file reports of child abuse and threatening to sue them when they refused. Mother's behavior was so disruptive that the pediatrician refused to continue to treat William. Additionally, the pediatrician reported that the interpreter he employed resigned from her position because mother was so difficult. Finally, and most persuasively, mother's therapist wrote a letter to DCFS recommending that mother undergo a mental health evaluation, stating "It is my recommendation that [mother] and [father] have a psychiatric evaluation to discard mental illness issues, because it seems that it has been challenging for [mother] to communicate with her son's father, and the assessment may benefit both parties and the safety of their son." Mother ignores this significant history of mental health concerns in her briefing. As there is substantial evidence in the record of mental health concerns regarding mother, the juvenile court did not err in requiring mother to undergo a mental health evaluation as part of her dispositional case plan.

3. *Removal Order*

Section 361, subdivision (c)(1) provides the juvenile court may remove a child from the custody of a parent if it finds, by clear and convincing evidence, "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." The court must also "make a determination as to whether reasonable efforts were made to prevent or to eliminate the need for removal." (§ 361, subd. (e).)

12

"'A removal order is proper if it is based on proof of (1) parental inability to provide proper care for the minor and (2) potential detriment to the minor if he or she remains with the parent.' [Citations.] It is not required that the parent be dangerous or that the child have been harmed before removal is appropriate. [Citation.] 'The focus of the statute is on averting harm to the child.'" (*In re D.D.* (2019) 32 Cal.App.5th 985, 996.) The juvenile court must consider "'not only the parent's past conduct, but also current circumstances, and the parent's response to the conditions that gave rise to juvenile court intervention.'" (*In re M.V.* (2022) 78 Cal.App.5th 944, 967.) "The jurisdictional findings are prima facie evidence the minor cannot safely remain in the home." (*In re T.V.* (2013) 217 Cal.App.4th 126, 135, citing § 361, subd. (c)(1).)

We affirm the removal order if it is supported by substantial evidence. (*In re V.L.* (2020) 54 Cal.App.5th 147, 154.) When conducting a substantial evidence review of a finding made under the clear and convincing evidence standard: "[A]n appellate court must account for the clear and convincing standard of proof when addressing a claim that the evidence does not support a finding made under this standard. When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable factfinder could have found it highly probable that the fact was true. In conducting its review, the court must view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011–1012.)

13

Substantial evidence shows that removal from the mother's custody was necessary to protect William's physical and emotional well-being, and there were no other reasonable means by which his well-being could be protected without removal. The record shows mother physically and emotionally abused William's half-sibling when mother shared a home with father and the half-sibling. Mother's history of explosive behavior persisted despite having previously completed anger management training. As discussed above, these anger issues, while apparently not directed at William, nonetheless threatened William's ability to obtain medical care and, therefore, posed a danger to his well-being.

Mother argues there is no substantial evidence establishing that reasonable efforts had been made to prevent William's removal. She claims other alternatives were available, including returning William to her custody with DCFS to perform unannounced check-ins at the mother's home. We disagree. The record establishes that returning William to mother's custody would have posed a substantial danger to William's emotional and physical well-being. Further, unannounced visits would be of limited protective value, as those services "can only assess the situation . . . at the time of the visit[,]" and would detect abuse only after it had occurred. (*In re A.F.*, *supra*, 3 Cal.App.5th at p. 293.)

We note the evidence supporting removal is so clear and convincing that mother did not object to the removal order at the dispositional hearing below. Instead, mother only challenged the dispositional order of monitored visitation and the psychiatric evaluation. On this basis alone we could find mother forfeited any challenge to the removal order. (*In re T.G.* (2013) 215 Cal.App.4th 1, 14 ["'[a] party forfeits the right to claim error as grounds for reversal on appeal when he or she fails to raise the objection in the trial

14

court'"]; *In re S.B.* (2004) 32 Cal.4th 1287, 1293 ["[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court"].) However, we have elected instead to reach the merits of mother's claim and find that the juvenile court's removal order was supported by substantial evidence.

Mother also argues the juvenile court failed to state the facts supporting its dispositional orders. Section 361, subdivision (e) provides: "The court shall state the facts on which the decision to remove the minor is based." It is undisputed that the juvenile court did not state the facts which supported its dispositional orders. However, as mother and DCFS acknowledge, such findings can be implied where the evidence is clear. (See *In re Marquis D.* (1995) 38 Cal.App.4th 1813, 1825; accord, *In re Isayah C.* (2004) 118 Cal.App.4th 684, 699.)

The evidence here is sufficiently clear to deem the juvenile court's findings implied. The record establishes the court's dispositional orders were based on the potential harm to William stemming from mother's physical and emotional abuse of William's half-sibling, mother's history of violence toward father, mother's ongoing anger issues, and ongoing concerns regarding mother's mental health. As the required findings under subdivision (e) can be implied from the record, the juvenile court's failure to state these findings on the record does not warrant reversal of the court's dispositional orders.

//
//
//
//

15

## DISPOSITION

The juvenile court's jurisdictional findings and disposition orders are affirmed. The motion to dismiss filed by DCFS is denied.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, J.

WE CONCUR:


CURREY, P. J.


COLLINS, J.

16